Alfred RICCIUTI & Daniel
Ricciuti, Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHORI-
TY, New York Transit Police Dept.,
N.Y.C.T.A. Police Chief Vincent del
Castillo, N.Y.C.T.A. P.D. Lieut. R.L.
Wheeler, N.Y.C.T.A. P.O. Henry Lopez,
the City of New York, N.Y.C. Dept. of
Corrections, N.Y.C. Corrections Comm.
R. Koehler, N.Y.C. Corrections Officer
Harlice Watson, Defendants.

No. 90 Civ. 2823 (CSH).

United States District Court,
S.D. New York.

June 4, 1992.

Kathleen O'Connell, Murphy & O'Con-
nell, New York City, for plaintiffs.

Larry H. Hecht, Asst. Gen. Counsel,
Brooklyn, N.Y., Ann Marie Vroman, Asst.
Corp. Counsel, New York City, for defen-
dants.

MEMORANDUM OPINION
AND ORDER

HAIGHT, District Judge:

This case is before the Court on defen-
dants' motion for separate trials and bifur-
cation of discovery pursuant to Fed.
R.Civ.P. 42(b). For the reasons stated be-
low, the motion is granted.

BACKGROUND

This action arises out of an altercation
that occurred between the plaintiffs and
several of the defendants on April 30, 1989,
outside Yankee Stadium in the Bronx.

According to their complaint, Alfred Ric-
ciuti and his nephew Daniel Ricciuti were
walking along 161st Street at approximate-
ly 5:00 p.m. when they encountered defen-
dant Harlice Watson. Watson, a New
York City Corrections officer not in uni-
form, allegedly assaulted Alfred Ricciuti,
knocked him to the ground, and taunted
him with a handgun. Watson then left the
scene but returned with defendant Henry
Lopez, a New York City Transit Police

officer from Transit Police District 11 at the River Avenue subway station. Officer Lopez allegedly threw Alfred Ricciuti against the building wall, searched him and placed him under arrest. Lopez, Watson and Alfred Ricciuti then began walking to the Transit Police Station located in the River Avenue subway station. Daniel Ricciuti followed. On the way there, according to the plaintiffs, Officer Lopez turned around and kicked Daniel Ricciuti in the legs, stating "you're following too close!" Plaintiffs' Amended Complaint at 12.

Plaintiffs further allege that once at the Transit Police Station, defendant R.L. Wheeler, a Transit Authority Police lieutenant and the commanding officer on duty, refused to permit Alfred Ricciuti to make a complaint against Watson. Wheeler authorized Lopez to process the arrest and to lock Alfred Ricciuti in a holding pen. Watson then allegedly threw Daniel Ricciuti against the wall, placed him under arrest, and placed him in a holding pen. Plaintiffs claim that Watson swore out a felony complaint falsely charging both of them with felonious assault and aggravated harassment, and charging Alfred Ricciuti with using racial epithets against Watson. These charges were ultimately dismissed by the Bronx Criminal Court, and this civil rights action followed.

Plaintiffs seek relief from the three individuals involved in the alleged incidents: Lopez, Wheeler, and Watson. In addition, plaintiffs name as defendants the New York City Transit Authority; the New York City Transit Authority Police Department ("TAPD"); Commissioner of the TAPD, Vincent del Castillo; the City of New York; the New York City Department of Corrections; and the former New York City Corrections Commissioner, Richard Koehler. Plaintiffs state claims under 42 U.S.C. §§ 1983 and 1988, as well as under state common law.

Defendants moved, by letters dated January 17, 1992 and January 29, 1992, for separate trials and bifurcation of dis-

covery.[1] Plaintiffs opposed the motion in a letter dated February 21, 1992. A flurry of letters followed, the final one of which is dated May 13, 1992.

## DISCUSSION

■ Rule 42(b), Fed.R.Civ.P., provides in pertinent part: "The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim ... or of any separate issue or of any number of claims...." Defendants claim that bifurcation would serve each of these interests—convenience, economy, and justice.

Convenience and economy are served, the defendants argue, because bifurcation could lead to an earlier and less costly disposition. They correctly point out that for plaintiffs to prevail on their § 1983 claim against the municipal entities, they must show that these entities implemented a policy or custom that caused plaintiffs' injuries. *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). But as defendants also observe, in order to trigger *Monell* liability, plaintiffs must show that their injuries rise to the level of a "constitutional tort." *Id.* at 691, 98 S.Ct. at 2036. *Monell* therefore creates an order of proof that, the defendants argue, favors bifurcation. Because plaintiffs must show that their constitutional rights were violated during the April 30, 1989 incident before they even address the "pattern and practice" claim against the municipalities, it makes sense to sever the trials so that the three individual officers are tried first. That way, the defendants assert, if the claims against the individuals are unsuccessful, the plaintiffs will no longer have any claims against the others. *See, e.g., Deagle v. City of New York, et al.*, No. 90 Civ. 8203, 1991 WL 267765 (S.D.N.Y. Dec. 3, 1991) (Freeh, J.); *Quick v. Short, et al.*, No. 87 Civ. 0695, 1990 WL 422418 (S.D.N.Y. Sept. 21, 1990) (Martin, J.). The Court would thus be spared significant time and effort.

While the plaintiffs suggest that their discovery requests will not be as expansive

---

1. Although defendants did not file a formal motion, their original letters are treated as one by the Court.

as defendants assert, defendants note that bifurcation may also prevent a prolonged examination of government policy and custom before trial. Judging by the pleadings, such an examination could be a time-consuming and elaborate affair: plaintiffs recite numerous incidents highlighting the improper training of officers, two of which occurred in 1975. If the Court orders bifurcation and the first trial disposes of the claims against the municipalities, this exhaustive discovery would indeed be avoided.

Although defendants argue convincingly that bifurcation may be an economical way of resolving this action, they overstate their case on one point. It is not true that a finding in favor of the officers *necessarily* disposes of the action. If the officers avoid liability by mounting a defense of qualified immunity—arguing that they committed the constitutional violations in good faith—the municipalities may still be liable. This is true because the qualified immunity defense is available to individuals but not to government bodies. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *see also City of Los Angeles v. Heller*, 475 U.S. 796, 798–99, 106 S.Ct. 1571, 1572–73, 89 L.Ed.2d 806 (1986) (per curiam). As the Sixth Circuit put it recently:

A § 1983 claim against police officers who assert qualified immunity must be dismissed even if the officers violated the plaintiff's rights, so "long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated" in light of clearly established law....

[T]he dismissal of a claim against an officer asserting qualified immunity in no way logically entails that the plaintiff suffered no constitutional deprivation, nor, correspondingly, that a municipality (which, of course, is not entitled to qualified immunity) may not be liable for that deprivation. At most it means that an officer in the defendant's position could reasonably have believed that the conduct in question did not violate law that was clearly established at the time.

*Doe v. Sullivan County, Tennessee*, 956 F.2d 545, 554 (6th Cir.1992) (citations omitted).

Thus, it is conceivable that bifurcation might actually result in a heightened expenditure of judicial resources. Since there will be at least some duplication of witnesses and evidence should two trials occur, this cost is clear if the officers are held liable and a second trial is needed. But it may even be true if the officers avoid liability at a first trial.

Taking these risks into account, I nevertheless conclude that the potential benefit of avoiding a second trial, and of avoiding discovery on all claims, outweighs the potential cost of conducting one large trial. Convenience and judicial economy alone dictate bifurcation.

But defendants make another argument that compels this result, asserting that separate trials are necessary to avoid prejudice. They claim that the individual officers could be unfairly influenced by evidence of incidents involving other officers, and could also be prejudiced by evidence of deficient training procedures implemented by the municipal entities. Conversely, the municipal entities could be prejudiced by evidence of the individual officers' aggressive activity on April 30, 1989.

Plaintiffs offer little to refute this argument. They correctly point out that a consolidated trial has the advantage of resolving all matters in one setting, but I am persuaded that it also has a significant disadvantage: the danger of contaminating the minds of jurors with evidence that is applicable to some defendants but not to others.

It is well-established that a court may order separate trials in order to 1) avoid prejudice; 2) provide for convenience; or 3) expedite the proceedings and be economical. *Ismail v. Cohen*, 706 F.Supp. 243, 251 (S.D.N.Y.1989), *aff'd*, 899 F.2d 183 (2d Cir. 1990); *United States v. International Business Machines Corp.*, 60 F.R.D. 654, 657 (S.D.N.Y.1973). It is also established that bifurcation requires the presence of only one of these conditions. *Ismail*, 706 F.Supp. at 251. In the case at bar, the

defendants have demonstrated the presence of all three. Accordingly, their motion for bifurcation is granted.

■ This does not resolve the matter, however, because plaintiffs raise in their letters another issue that I must address. This concerns the potential conflict of interest in defense counsel's representation of multiple defendants. The plaintiffs assert that the interests of the individual officers—Watson, Lopez and Wheeler—would be compromised if they are represented by municipal counsel. Accordingly, they ask me to order separate counsel for the three officers.

Their argument follows logically from the discussion, *supra,* concerning qualified immunity. Since the officers can claim a good faith defense to their actions on April 30, 1989, but the municipalities cannot, a conflict arises. As the Second Circuit explained:

> A municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy. The employee, by contrast, may partially or completely avoid liability by showing that he was acting within the scope of his official duties. If he can show that his actions were pursuant to an official policy, he can at least shift part of his liability to the municipality. If he is successful in asserting a good faith immunity defense, the municipality my be wholly liable because it cannot assert the good faith immunity of its employees as a defense to a section 1983 action. *Owen v. City of Independence,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

*Dunton v. County of Suffolk,* 729 F.2d 903, 907 (2d Cir.1984), *modified,* 748 F.2d 69 (2d Cir.1984).

When multiple representation by counsel for a public body creates a potential conflict of interest, the proper course is for the public employer to offer its officer employee separate counsel. *See Suffolk County Patrolmen's Benevolent Association, Inc. v. County of Suffolk,* 751 F.2d 550 (2d Cir.1985). In *Dunton* the Second Circuit

assumed without deciding that the officer could validly waive any objection to multiple representation. 729 F.2d at 909 n. 5. It seems clear enough to me that he may do so if properly allocuted.

The Office of General Counsel for the Transit Authority has heretofore represented that agency as well as the Transit Police Department, Transit Police Chief del Castillo, and Officers Lopez and Wheeler. In a letter dated January 29, 1992, General Counsel states that if the bifurcation request is granted, separate counsel will be offered Lopez and Wheeler. Although I see no reason why the offer of separate counsel should hinge on the granting of separate trials, the Court's holding makes that issue moot. Corporation Counsel for the City of New York, however, resists plaintiffs' motion. Its argument is that because the City is not claiming that Officer Watson acted in his individual capacity, there is no danger of a conflict. As its letter dated March 9, 1992, states, "Officer Watson has been provided with representation by the Corporation Counsel because he was found to have acted within the scope of his public employment, in the discharge of his duties, and in full compliance with all pertinent rules and regulations of the New York City Department of Correction." Letter at 2.

Corporation Counsel's position seems consistent with one case in this Court, *Katz v. Morgenthau,* 709 F.Supp. 1219 (S.D.N.Y. 1989) (Motley, J.). In that case, plaintiff Harry Katz sued 23 defendants under, *inter alia,* 42 U.S.C. §§ 1981, 1982, 1983, 1985 and 1986, after he was convicted of aggravated harassment in the second degree in New York Criminal Court. These defendants included those who prosecuted him and the officers who participated in his arrest. Judge Motley rejected plaintiff's claim that a conflict existed with the City's representation of individual officers. Distinguishing the case from *Dunton,* she reasoned that because the defendants were not being sued in their individual capacities, no potential conflict existed:

> [In *Dunton*] the Second Circuit found that where a police officer acted outside

the scope of his official duties by acting more like " 'an irate husband rather than a police officer,' " the "municipality may avoid liability by showing that the employee was not acting within the scope of his official duties, because his unofficial actions would not be pursuant to municipal policy." 729 F.2d at 907. Thus there existed the possibility for serious conflict and "the attorney's conflicting representation of Suffolk County," *id.*, mandated disqualification of that attorney.... Conflict arose when the county attorney asserted a defense which was good for the county but bad for the individual officer.

By contrast, in the instant action, the officers are not sued in their individual capacity.... [I]n arguing that the three police officers who arrested him did so in violation of his various constitutional rights, plaintiff nowhere asserted that the police officers' actions were committed outside the scope of their employment. Hence this is not a situation where conflicting defenses would be asserted by the city seeking to avoid liability by claiming the officers were acting outside their official scope, nor is it a situation where the officer, similarly seeking to avoid partial or complete liability, would claim that they were acting within the scope of their official duties, thereby shifting liability to the municipality. *Dunton*, 729 F.2d at 907.

*Katz v. Morgenthau*, 709 F.Supp. 1219, 1228 (S.D.N.Y.1989).

With the greatest respect, I do not entirely follow the reasoning in *Katz*. Even if the municipality does not seek to avoid liability by claiming the employee acted outside the scope of his employment, there remains a potential conflict. This is because, under *Owen v. City of Independence* and *Dunton*, the individuals can shift liability to the municipality even if they acted within the scope of their employment. They can do so by establishing a good faith, qualified immunity defense. This good faith defense is not available to the municipality. Conceptually at least, the officers could claim a good faith, qualified immunity based in part on improper or inadequate training. Thus, it is a defense that may be good for the officer but bad for the City. That represents a potential conflict. The Corporation Counsel must accordingly offer separate representation to Watson.[2]

## CONCLUSION

For the reasons stated above, defendants' motion for bifurcation of trial and discovery is granted. The first trial will cover all of plaintiffs' claims against defendants Watson, Wheeler and Lopez, as well as plaintiffs' state law claims against the other defendants. A second trial, if necessary, will cover the federal claims against the other defendants.

Also for the reasons stated above, the Transit Authority and the City are directed to advise the respective individual defendants of their right to independent counsel. If they elect separate representation, successor counsel must file and serve a notice of appearance within thirty (30) days of the date of this Order. If any individual defendant is inclined to waive potential conflicts and agree to multiple representation, present counsel are directed to advise the Court in writing promptly so that a hearing for purposes of allocution may be scheduled.

In accordance with plaintiffs' letter dated May 13, 1992, the deadline for the completion of discovery is hereby extended to December 4, 1992.

It is SO ORDERED.

---

**2.** The City also argues that "if plaintiffs believe that the Corporation Counsel should be disqualified from representing Officer Watson, they should submit a formal motion seeking that relief." Letter of March 9, 1992 at 2. I have already determined that the City's failure to file a formal motion is not fatal to their claim under Rule 42(b). I decline to apply a different standard to plaintiffs.