**Daniel RICCIUTI and Alfred Ricciuti,**
**Plaintiffs–Appellants,**

v.

**N.Y.C. TRANSIT AUTHORITY, New York City Transit Police Department, Vincent Del Castillo, N.Y.C. Transit Police Chief, Henry Lopez, N.Y.C. Transit Police Officer And R.L. Wheeler, N.Y.C. Transit Lieutenant, Defendants–Appellees,**

The City Of New York, New York City Department Of Corrections, Richard Koehler, N.Y.C. Department Of Corrections Commissioner And Harlice Watson, N.Y.C. Corrections Officer, Defendants.

**No. 341, Docket 96–7194.**

United States Court of Appeals, Second Circuit.

Argued Nov. 22, 1996.

Decided Aug. 21, 1997.

Kathleen M. O'Connell, New York City, (Murphy & O'Connell, New York City, of counsel), for Plaintiffs–Appellants.

Elizabeth I. Freedman, New York City, (Francis F. Caputo, Paul A. Crotty, Corporation Counsel of the City of New York, New York City, of counsel), for Defendants–Appellees New York City Transit Authority, New York Transit Police Department, and Vincent Del Castillo.

Michael A. Miranda, New York City, (Thurm & Heller, New York City, of counsel), for Defendant–Appellee Henry Lopez.

Denise A. Rubin, New York City (Alexander Peltz, Peltz & Walker, New York City, of counsel), for Defendant–Appellee R.L. Wheeler.

Before CARDAMONE, LEVAL, Circuit Judges, and POOLER,* District Judge.

CARDAMONE, Circuit Judge.

Plaintiffs Alfred and Daniel Ricciuti appeal from a judgment of the United States District Court for the Southern District of New York (Haight, J.) granting summary judgment in favor of defendants New York City Transit Authority, Transit Police Department, Transit Police Chief Vincent Del Castillo (municipal defendants) and in favor of defendants Transit Police Officer Henry Lopez and Transit Police Lieutenant Robert L. Wheeler. Plaintiffs sought damages principally under 42 U.S.C. § 1983 in connection with their arrests and subsequent treatment by Lt. Wheeler, Officer Lopez and New York City Corrections Officer Harlice Watson. In granting summary judgment for defendants, the district court reasoned that Officers Lopez and Wheeler were entitled to qualified immunity and that the municipal defendants could not be subject to liability because it was evident that plaintiffs' constitutional and civil rights had not been violated.

We write because the district court improperly granted summary judgment to defendants. The record before us reveals evidence from which a jury could find that certain of the individual police officers prepared a false report and initiated a prosecution of plaintiffs predicated on this manufactured evidence. We also write to emphasize a larger issue raised by this case. Plaintiffs allege that the defendant police officers lied and fabricated evidence. While we do not know whether the accusations can be sustained, we do know that such accusations must be carefully reviewed. Lying is wrong, and if the police lie while acting in their official capacity, they also violate the public trust. Courts must ensure that such serious accusations receive appropriate scrutiny lest our Court appears to endorse such official misconduct, which would weaken the public's respect for the administration of justice. In making these remarks, we emphasize that we have reached no conclusions about whether the plaintiffs' accusations can be substantiated. It will be for a jury to determine at trial whether plaintiffs have proved their very serious charges.

## BACKGROUND

An altercation occurred outside Yankee Stadium in the Bronx, New York after a baseball game on an early Sunday evening in April 1989. From it ensued this time-consuming litigation, which has already been before this Court once before. *See Ricciuti v. N.Y.C. Transit Authority*, 941 F.2d 119 (2d Cir.1991) [*Ricciuti I* ].

The street fight involved two men. One, defendant Harlice Watson, was an African–American New York City Corrections officer. The other was plaintiff Alfred Ricciuti, who is white. Who started the fight is disputed. But Watson, with blood on his face and a broken pair of glasses in his hand, displayed his corrections badge and reported the altercation to defendant Henry Lopez, a New York City Transit police officer, passing through the area on his way back from his meal break. Watson said he had just been assaulted without provocation by a man across the street and identified Alfred Ricciuti as his assailant. Accepting this version of what had happened, Officer Lopez arrested plaintiff, handcuffed him and, together with Officer Watson, began marching him to the nearby # 11 Transit Police Station.

As they were walking, Alfred's nephew, plaintiff Daniel Ricciuti, approached the group from behind, protesting his uncle's innocence and objecting to the arrest. The nephew's protests were ignored, and the four men proceeded to the station. When they arrived, Officer Lopez conferred with the

---

* Hon. Rosemary S. Pooler, United States District Court Judge for the Northern District of New York, sitting by designation.

duty officer, defendant Lt. Robert Wheeler. Plaintiffs could not hear the substance of this conversation, but soon thereafter, Daniel Ricciuti was also arrested on charges of assaulting Watson. It is not clear which officer arrested him. Plaintiffs claim, and Officer Watson admits, that Watson carried out the arrest. Daniel Ricciuti claims to have asked Watson "what he thought he was doing" and asserts that Watson replied that he was arresting him "for assault." Defendants Wheeler and Lopez disagree, maintaining that Officer Lopez arrested the nephew on Lt. Wheeler's orders after the injured Officer Watson reported that Daniel Ricciuti had participated in the assault by holding Watson's arms during the latter's fight with his uncle. Plaintiffs dispute whether prior to Daniel's arrest Watson made any indication that Daniel was involved. Although all parties now appear to concede that the arrest of Daniel Ricciuti took place at the police station, Lt. Wheeler recorded on the blotter that Officer Lopez had carried out the arrest at 5:10 p.m. on 161st Street.

While both plaintiffs were placed in holding cells, Lt. Wheeler decided to charge them with assault in the second degree, defined under New York law as assault with intent to cause serious physical injury. N.Y. Penal L. § 120.05(1). Serious physical injury, in turn, means an injury that is life-threatening or results in death, permanent loss of bodily function or permanent disfigurement. N.Y. Penal L. § 10.00(10). Lt. Wheeler recorded the small cut underneath Watson's left eye as "S.P.I."—an abbreviation for serious physical injury.

Lt. Wheeler also initiated a bias incident investigation by contacting that day's duty captain for Bronx County, and informing him that a suspected bias incident had occurred. A bias investigation was then conducted. A key piece of evidence in the investigation was a statement contained in an unsigned memorandum typed on Transit Authority letterhead. That memorandum reads:

Lt. Wheeler III interviewed Deft. #1 [Alfred Ricciuti] at 1725 hrs. at District 11. Deft. states that "I was walking down the street and I bumped into this nigger." "I said I was sorry but I was a little drunk and I don't back down from anybody." "I hit the man and the man punched me back so I hit this guy again and the man hits me and knocks me down." "Nobody knocks me down like that and gets away with it I'll kick anyone['s] ass who does that to me. I'd kill the f___ or he would have to kill me." "I'm not a rowdy guy but I'm not afraid of anyone, even if they have a gun."

The statement contained in this memorandum found its way verbatim into several subsequent investigation reports prepared in connection with the bias investigation, and apparently based largely on this statement, the assault was classified as bias-related.

The Ricciutis insist this "confession" was fabricated by Lt. Wheeler. Alfred Ricciuti denies ever making a statement to Lt. Wheeler, and Daniel Ricciuti, who swears he was in his uncle's presence the entire time, avers that no such statement was ever made. Officer Lopez admitted in his deposition that he would have made a notation in his notebook had such a statement been made in his presence, but there was no such notation. Although the statement "admits" Alfred Ricciuti was "a little drunk," none of Officer Lopez's arrest notes indicate that either of the Ricciutis was intoxicated. Both plaintiffs vehemently deny uttering any racial epithets at any time.

The memorandum is unsigned, but Officer Lopez testified at his deposition that Lt. Wheeler authored it. For his part, defendant Wheeler admitted at his deposition that he might have written the memorandum, but could not recall Alfred Ricciuti making the specific statement attributed to him. Because of the seriousness of the charges against them, plaintiffs were ineligible for release on desk appearance tickets, and were forced to remain in jail for more than 30 hours from April 30 until near midnight on May 1, 1989 when they were released on their own recognizance.

Upon receiving the Ricciutis' file, including the "confession," the Bronx district attorney's office added a charge of aggravated harassment in the second degree. Under New York law a person is guilty of second-degree aggravated harassment when, "with

intent to harass, annoy, threaten or alarm another person" he "strikes ... another person ... or attempts or threatens to do the same because of the race ... of such person." N.Y. Penal L. § 240.30(3). After their arraignment, the Ricciutis appeared in the Bronx Criminal Court on seven separate occasions between May 17 and July 13, 1989. On June 7, 1989 the prosecutor reduced the felony second-degree assault charges, which required a showing of serious physical injury, N.Y. Penal L. § 120.05(1), to misdemeanor charges of third-degree assault, which do not require the physical injury to be serious, N.Y. Penal L. § 120.00. All charges were dismissed by a pre-trial court order on July 13, 1989, after Lt. Wheeler, despite numerous adjournments, failed to appear to testify in support of the "confession."

### PRIOR PROCEEDINGS

After the charges against them were dismissed, the Ricciutis filed an action seeking damages under 42 U.S.C. §§ 1983 and 1988, as well as state common law, alleging, *inter alia,* that Officers Lopez, Wheeler and Watson had arrested them without probable cause and conspired maliciously to prosecute them on false felony assault charges. They further alleged that the municipal defendants, the New York City Corrections Department, and its Commissioner were liable for failure adequately to train, supervise, control and discipline the defendant officers. When this matter was before us six years ago, we held the allegations against the municipal defendants sufficient to survive a motion to dismiss for failure to state a claim. *Ricciuti I,* 941 F.2d at 120.

On remand, the district court granted the defendants' motion for separate trials and bifurcation of discovery, directing the first trial to cover plaintiffs' claims against the individual defendants Watson, Wheeler and Lopez, and the state law negligence claims against the other defendants. *Ricciuti v. N.Y.C. Transit Authority,* 796 F.Supp. 84, 88 (S.D.N.Y.1992). The plaintiffs' § 1983 claims against the municipal defendants under *Monell v. Dep't of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), were then to be heard in a second

trial, if necessary. *Ricciuti,* 796 F.Supp. at 88. In February 1994 after extensive discovery but before the first trial, individual defendants Lopez and Wheeler and the municipal defendants moved for summary judgment, which the district court granted for the reasons earlier recited. Because fact issues remain, we reverse in part the grant of summary judgment.

### DISCUSSION

■ We review the district court's grant of summary judgment *de novo. Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir. 1996). On appeal, plaintiffs argue granting that drastic remedy was inappropriate because genuine issues of fact exist as to (1) whether their arrests were objectively reasonable and based on probable cause, (2) whether Officers Lopez and Wheeler fabricated a false confession to be used against them, and (3) whether Lt. Wheeler's action in filing second-degree assault charges constituted malicious prosecution when it was obvious that Officer Watson's injuries were not sufficiently serious to merit that charge. We discuss each of these points in order.

### I Reasonableness of the Arrests

#### A. *Alfred Ricciuti's Arrest*

■ The plaintiffs first contend that the district court's grant of summary judgment in Officer Lopez's favor on qualified immunity grounds was inappropriate because a reasonable jury could find, based on the evidence presented, that he lacked probable cause to arrest Alfred Ricciuti, and that the arrest was objectively unreasonable.

The doctrine of qualified or good faith immunity shields police officers from being subject to personal liability for damages. The doctrine extends to official conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982), insofar as it was objectively reasonable for such officials to believe, even if mistakenly, that their conduct did not violate such rights. *Anderson v.*

*Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987).

■ The right to be free from arrest or prosecution in the absence of probable cause is a long established constitutional right. A police officer is entitled to qualified immunity shielding him or her from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. *See Golino v. City of New Haven,* 950 F.2d 864, 870 (2d Cir.1991).

■ An officer has probable cause to arrest when in possession of facts sufficient to warrant a prudent person to believe that the suspect had committed or was committing an offense. *Gerstein v. Pugh,* 420 U.S. 103, 111, 95 S.Ct. 854, 861, 43 L.Ed.2d 54 (1975); *O'Neill v. Town of Babylon,* 986 F.2d 646, 650 (2d Cir.1993). In evaluating these matters, we consider the facts available to the officer at the time of the arrest. *Lowth v. Town of Cheektowaga,* 82 F.3d 563, 569 (2d Cir.1996). Summary judgment on the basis of qualified immunity is appropriate when the only conclusion a rational jury could reach is that reasonably competent police officers could under the circumstances disagree about the legality of the arrest. *Lennon v. Miller,* 66 F.3d 416, 421 (2d Cir.1995).

Plaintiffs contend no reasonable police officer faced with the facts apparent to Officer Lopez could believe that there was probable cause for the arrest. It is undisputed that Officer Lopez was approached by a visibly injured Harlice Watson, who produced a corrections officer badge, stated that he had been attacked without provocation, and identified Alfred Ricciuti as his assailant. Although plaintiff protested that Watson had started the fight, he did not deny causing Watson's injuries. Plaintiff insists that notwithstanding Watson's injuries and identification of him as his assailant, the arrest was objectively unreasonable because plaintiff's loud protestations of innocence should have made clear to Officer Lopez that plaintiff was acting in self-defense and therefore lacked the requisite intent to commit an assault. Once plaintiff protested his innocence, the

argument continues, Officer Lopez should have made further inquiries and interviewed witnesses at the scene. Having failed to do so, the argument concludes, probable cause to arrest was clearly lacking.

■ We are not persuaded. Although Officer Lopez would have been entitled to believe Alfred Ricciuti's version of events rather than Watson's, he was not required to do so. Given Watson's version of events and his visible injuries, a competent police officer could believe it was objectively reasonable to arrest plaintiff for the assault that had been committed. The officer was not required to make a full investigation into plaintiff's state of mind prior to taking action. Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. *Baker v. McCollan,* 443 U.S. 137, 145–46, 99 S.Ct. 2689, 2695–96, 61 L.Ed.2d 433 (1979) (arresting officers not required to investigate claim of mistaken identity or lack of requisite intent); *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989) (factfinder determines whether defendant's story holds up, not arresting officer). Here, Watson's version of events was plausible, and his credibility was buttressed by the fact that he identified himself a law enforcement officer. Under the circumstances, Officer Lopez had a reasonable basis for believing there was probable cause, and was entitled to qualified immunity in making the arrest notwithstanding Alfred Ricciuti's protestations of innocence.

### B. *Daniel Ricciuti's Arrest*

■ Plaintiff Daniel Ricciuti also challenges the objective reasonableness of his arrest. The circumstances of that arrest are in dispute. Daniel Ricciuti points to evidence from which a reasonable jury could conclude that Officers Lopez and Wheeler first stood idly by, refusing to intervene, as Watson arrested him under circumstances indicating a clear lack of probable cause, and then falsified records and made false statements to indicate that Lopez was the arresting officer. If this evidence is accepted as true,

plaintiffs declare, then Officer Lopez and Lt. Wheeler could be liable for damages under § 1983.

■ A police officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers." *O'Neill v. Krzeminski,* 839 F.2d 9, 11 (2d Cir.1988). Failure to intercede to prevent an unlawful arrest can be grounds for § 1983 liability. *Id.* To recover on that ground, of course, a plaintiff must still overcome the hurdle of qualified immunity. A police officer cannot be held liable in damages for failure to intercede unless such failure permitted fellow officers to violate a suspect's "clearly established statutory or constitutional rights" of which a reasonable person would have known. *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. Further, the failure to intercede must be under circumstances making it objectively unreasonable for him to believe that his fellow officers' conduct did not violate those rights. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039–40.

■ To obtain summary judgment on qualified immunity grounds in connection with a claim of failure to intercede to prevent an illegal arrest, a defendant must show that the only result a fair jury could reach is that reasonably competent police officers, faced with the information available to the non-intervening officer at the time of the arrest, could disagree about the legality of the arrest. *See Lennon,* 66 F.3d at 420–21 (discussing summary judgment standards in qualified immunity context).

Applying those principles to this case we agree with plaintiff that summary judgment was inappropriately granted. Crediting plaintiffs' evidence, a jury could find that Watson did not tell Lopez or Wheeler that Daniel had participated with Alfred in the assault; that Lopez and Wheeler believed Watson was arresting Daniel in the station house without cause; and that they then falsified evidence to make it appear that Daniel had been arrested at an earlier time, in a different place, and by Lopez, instead of Watson.

In sum, plaintiffs' evidence could support the view that Lopez and Wheeler cooperated with Watson in arresting Daniel and falsifying the circumstances, although they knew there was no probable cause to justify the arrest. Because such findings could permit the imposition of liability under § 1983, we reverse the grant of summary judgment dismissing Daniel's false arrest claims against Lopez and Wheeler.

## II The Fabricated Confession

■ We turn now to the plaintiffs' primary contention on appeal—that the district court erred in granting summary judgment for the defendants because genuine issues of fact exist as to whether the individual defendants knowingly fabricated and distributed a false confession to prosecutors. Although the district court failed to address this matter specifically in its opinion, defendants nonetheless urge that on this issue the grant of summary judgment should be upheld on several grounds.

As an initial matter, Officer Lopez maintains that summary judgment was appropriate as to him because even if the fabrication of a false confession is material, the plaintiffs have failed to put forth sufficient evidence to support a jury finding that he had any personal involvement with such a confession. In deciding a motion for summary judgment, we view the evidence in the light most favorable to the non-moving party and draw all factual inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Doing so here, we think a reasonable jury could find that Officer Lopez heard the content of the document in question, knew that Alfred Ricciuti had *not* made the statements attributed to him and nonetheless forwarded the statement to the prosecutor's office. Because a reasonable jury could find against Officer Lopez on this issue, a genuine issue of material fact exists with respect to it.

However, the primary argument of Officer Lopez and the other defendants goes not to the genuineness of the fact issues, but to their materiality. Each of the defendants insists that so long as there was probable cause for Alfred Ricciuti's arrest—indepen-

dent of the allegedly fabricated evidence—the fabrication of evidence is legally irrelevant. In essence, they argue that as long as the arrest complied with the Fourth Amendment, the Ricciutis can have no claim for post-arrest fabrication of evidence against them.

This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mockery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable "corruption of the truth-seeking function of the trial process." *United States v. Agurs*, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States*, 405 U.S. 150, 153, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972); *Mooney v. Holohan*, 294 U.S. 103, 112, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935).

▪ When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983. *United States ex rel. Moore v. Koelzer*, 457 F.2d 892, 893–94 (3d Cir.1972); *see also Smith v. Springer*, 859 F.2d 31, 34 (7th Cir.1988); *Geter v. Fortenberry*, 849 F.2d 1550, 1559 (5th Cir.1988). Here, a reasonable jury could find, based on the evidence, that defendants Lopez and Wheeler violated the plaintiffs' clearly established constitutional rights by conspiring to fabricate and forward to prosecutors a known false confession almost certain to influence a jury's verdict. These defendant police officers are not entitled to summary judgment on the ground of qualified immunity. Qualified immunity is unavailable where, as here, the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise. *Anderson v. Creighton*, 483 U.S. at 641, 107 S.Ct. at 3039–40.

Hence, we hold it was error for the district court to grant summary judgment to defendants Lopez and Wheeler on qualified immunity grounds with respect to the fabrication of evidence claim.

### III Malicious Prosecution

▪ Plaintiffs declare further that dismissal of the claims against the defendants was improper because a reasonable jury could find Lt. Wheeler lacked probable cause to charge them with second-degree assault. To prevail on a claim of malicious prosecution, four elements must be shown: (1) the defendant initiated a prosecution against plaintiff, (2) without probable cause to believe the proceeding can succeed, (3) the proceeding was begun with malice and, (4) the matter terminated in plaintiff's favor. *See O'Brien v. Alexander*, 101 F.3d 1479, 1484 (2d Cir.1996).

Here, with regard to the first element, a jury could clearly find that Lt. Wheeler started the assault prosecution because no one disputes that he started the prosecution by filing the charges of second-degree assault. A jury could also find that Lt. Wheeler was instrumental in bringing about the charges of second-degree aggravated harassment. Although these charges were added by the Bronx district attorney's office, and thus not directly filed by Lt. Wheeler, a jury could find that Lt. Wheeler played a role in initiating the prosecution by preparing the alleged false confession and forwarding it to prosecutors.

The second element is whether probable cause to charge the plaintiffs for second-

degree assault was clearly lacking. A charge of second-degree assault is appropriate only when there has been "serious physical injury"—which New York law defines as "physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal L. § 10.00(10). Wheeler admitted in his deposition testimony that at the time of arrest, he did not think Watson's injuries were sufficiently serious to meet the statutory definition and, in fact, nothing in the record suggests the injury was even arguably serious enough to meet the standard required for the charge. A reasonable jury could clearly find lack of probable cause for the charge of second-degree assault.

Likewise, if plaintiffs' testimony is believed, they never uttered any racial epithets or took any action that would justify a charge of second-degree aggravated harassment, which requires a finding that the victim was harassed on account of his race. N.Y. Penal L. § 240.30(3). If so, a jury could find that there was no probable cause for the harassment charge.

To succeed on a malicious prosecution claim, the plaintiffs also must demonstrate that the proceeding was instituted with malice. As we noted in *Lowth*, lack of probable cause generally raises an inference of malice sufficient to withstand summary judgment. 82 F.3d at 573. In the present case, as we have just noted, a jury could find that probable cause for the charges against the plaintiffs was lacking, and that finding alone would support an inference of malice.

 The final question is whether a reasonable jury could find that the proceedings terminated in the plaintiffs' favor. When the termination of a case is indecisive because it does not clearly address the merits of the charge, the underlying facts must be examined to determine "whether the failure to proceed implies a lack of reasonable grounds for the prosecution." *Rounseville v. Zahl*, 13 F.3d 625, 629 (2d Cir.1994) (quoting *Conway v. Village of Mount Kisco*, 750 F.2d 205, 215 (2d Cir.1984)). In the case at hand the Bronx district attorney's office reduced the charges to misdemeanor assault on June 7, 1989, and all charges were dismissed by the court prior to trial on July 13, 1989. Plaintiffs contend both the reduction of the felony charges by the prosecutor and the ultimate dismissal of all charges by the court came about because of a lack of reasonable grounds for prosecution. As evidence that the reduction of charges implied a lack of reasonable grounds for prosecution, plaintiffs point to the minimal nature of Watson's cut—requiring only a few stitches and then only to prevent a scar—as being insufficient to constitute "serious physical injury" under New York law. Lieutenant Wheeler, in opposition, declares the reduction and dismissal resulted from purely procedural matters. Where, as here, the reasons for a dismissal of charges are in dispute, the matter should ordinarily be submitted to a jury. *Id.* Because a jury could find in plaintiffs' favor with regard to each of the four required elements, we agree with the plaintiffs that the district court erred in dismissing the malicious prosecution claim against Lt. Wheeler.

 We also agree with plaintiffs that the district court erred in concluding that no jury could find that defendant Lopez was implicated in a conspiracy to maliciously prosecute the plaintiffs. Taking all of plaintiffs' evidence as true, a jury could find that Lopez knowingly took part with Wheeler in the distribution of a confession he knew to be false, and that he, together with Wheeler, lied about the circumstances surrounding Daniel Ricciuti's arrest. A jury which so found might rationally infer that Wheeler and Lopez were jointly involved in a common scheme—a conspiracy to ensure that plaintiffs were detained on false charges. *See generally Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir.1996) (setting forth requirements for civil conspiracy under § 1983 and noting that agreement can be proved by circumstantial evidence). If so, a jury could assign responsibility to Lopez for acts taken by Wheeler in furtherance of the conspiracy. Summary judgment should not have been granted to Officer Lopez on the malicious prosecution claim.

## IV Municipal Defendants

The district court granted summary judgment in the municipal defendants' favor after concluding that no reasonable jury could find a constitutional or civil violation based on the evidence. Because a claim of inadequate training and supervision under § 1983 cannot be made out against a supervisory body without a finding of a constitutional violation by the persons supervised, *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986), these claims were dismissed.

As our discussion of the above issues indicates, a reasonable jury could find that Officers Lopez and Wheeler violated the plaintiffs' constitutional rights by failing to intercede to prevent the unlawful arrest of Daniel Ricciuti and by fabricating a false confession and forwarding it on to prosecutors, and by maliciously prosecuting them for second-degree assault without probable cause to believe that injury of the requisite seriousness had been inflicted. The district court's grant of summary judgment to the municipal defendants on the ground that no constitutional violation could be shown was thus error.

## CONCLUSION

For the foregoing reasons, we affirm the grant of summary judgment dismissing the claims against Officer Lopez inasmuch as they relate to the legality of Alfred Ricciuti's arrest. We reverse and vacate the district court's grant of summary judgment dismissing the plaintiffs' claims against Officer Lopez and Lt. Wheeler for the arrest of Daniel Ricciuti and the alleged fabrication of evidence against both plaintiffs, its grant of summary judgment in favor of defendants Wheeler and Lopez on the malicious prosecution claim, and the grant of summary judgment in favor of the municipal defendants. On those issues the matter is remanded to the district court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.