**Donald C. HENNICK, Plaintiff,**

v.

**Christopher BOWLING, Defendant.**

**No. C99–1180L.**

United States District Court,
W.D. Washington,
at Seattle.

Sept. 14, 2000.

Brady Ralph Johnson, Seattle, WA, Laura B Allen, Favre & Allen, Seattle, WA, for Donald C Hennick, plaintiff.

Anne Melani Bremner, Stafford, Frey & Cooper, Seattle, WA, for Christopher Bowling, defendant.

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

LASNIK, District Judge.

This matter comes before the Court on defendant's motion for summary judgment. Having reviewed the briefs and exhibits offered by the parties, and having now heard oral argument from counsel, the Court hereby GRANTS defendant's motion as to plaintiff's § 1983, malicious prosecution, and false arrest/false imprisonment claims and DENIES defendant's motion as to the defamation claim.

Although very few facts regarding plaintiff's interaction with defendant are undisputed, the parties agree that on July 31, 1997, plaintiff was in the area of the Pike Place Market when a women's handbag was stolen. The victim, Ms. Cooper, and her sister witnessed the theft and were able to observe the thief. Ms. Cooper gave chase but lost him in the crowd. Shortly thereafter, a bystander gave Ms. Cooper a pair of sunglasses and some papers that were reportedly dropped by the thief. Ms. Cooper and her sister provided a description of the thief to Pike Place Security Officer Townsend and turned over the glasses and papers.

Plaintiff, who matched the physical description given by the victim and her sister, was approached by Officer Townsend as he was getting into a vehicle near the market. Officer Townsend asked him if he had lost a pair of sunglasses, to which plaintiff responded in the affirmative. Plaintiff was asked to, and did, accompany Officer Townsend back to the Pike Place security office. As plaintiff was ushered into the office, Ms. Cooper and her sister identified him as the man who had stolen

her purse. By the time defendant, a Seattle Police Officer, arrived on the scene, he had received a description of the thief and had been told that Pike Place security had a suspect in custody. After learning that the victim and a witness had identified the individual in custody as the person who had stolen the handbag, defendant placed plaintiff under arrest.[1]

Defendant maintains that sometime after plaintiff's arrest, plaintiff confessed to stealing the handbag. Plaintiff adamantly denies having made such a statement and asserts that he, in fact, told defendant that he had been chasing the thief, dropping his sunglasses in the process, before losing the thief in an ally. Far from confessing, plaintiff states that he provided a detailed description of the thief and the route he had taken in an effort to convince defendant that he was not involved in the crime. Plaintiff maintains that defendant falsified evidence by filing incident reports containing the alleged "confession." Based on the witness statements and the incident reports, the prosecutor filed an information charging plaintiff with first-degree theft. The charge was ultimately dismissed when a previously unknown witness stated that he had witnessed the chase immediately following the theft and that the man he had seen running with the handbag was not Mr. Hennick.

As a result of these events, plaintiff has alleged violations of his civil rights under 42 U.S.C. § 1983, defamation, malicious prosecution, and false arrest/false imprisonment. *See* Complaint at ¶¶ 5.1–5.4.[2] Each of these claims is considered below.

## VIOLATIONS OF 42 U.S.C. § 1983

■■■ Section 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights. The statute itself does not create substantive rights, but merely provides "a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Where a § 1983 defendant has claimed qualified immunity from civil damages, plaintiff is required to show that the official has violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Thus, the first issue the Court must decide under both § 1983 and the doctrine of qualified immunity is whether the plaintiff has alleged the deprivation of a federally protected statutory or constitutional right. *Conn v. Gabbert*, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999).

■ In his complaint, plaintiff alleges violations of the Fourth Amendment (the right to be free from unreasonable searches and seizures) and the Fourteenth Amendment (deprivation of liberty without due process of law). Specifically, plaintiff argues that defendant lacked probable cause to arrest plaintiff and that defendant violated plaintiff's constitutional rights by fabricating a "confession." *See* Plaintiff's Brief in Opposition at 12–19.

In the context of this motion for summary judgment, the evidence must be considered in the light most favorable to plaintiff, the non-moving party, when de-

---

1. How Officer Bowling learned that the victim and her companion had identified plaintiff as the thief is in dispute. Regardless of whether the information was transmitted to defendant as he arrived at the Pike Place security office or whether defendant had the victim and her companion identify plaintiff after he had made contact with the suspect, all parties agree that defendant was aware of the identification at the time he placed plaintiff under arrest.

2. The complaint also alleges that defendant's actions were outrageous and constituted assault and battery. No factual allegations are made in support of those claims, however, and plaintiff has apparently decided to concentrate on the § 1983, defamation, malicious prosecution, and false arrest/false imprisonment causes of action. *See* Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment at 1.

termining whether there exist any disputed genuine issues of material fact that would preclude summary judgment. *See, e.g., Berry v. Valence Technology, Inc.,* 175 F.3d 699, 703 (9th Cir.1999). Thus, the Court will assume, for purposes of this motion, that defendant's decision to arrest plaintiff was based on a second- or third-hand description of the thief, defendant's comparison of plaintiff to that description, and the identification of plaintiff as the thief by both the victim and her companion. The Court finds that, even in the absence of evidence regarding plaintiff's possession of a tape measure, the alleged "confession," or any attempt to independently verify the witness identifications, defendant had reasonable grounds to believe plaintiff had committed a crime. The victim and her companion gave reasonably consistent descriptions, plaintiff, as observed by defendant, generally fit those descriptions, and defendant was aware that the witnesses had identified plaintiff as the man who had stolen the handbag. Under these circumstances, the only reasonable conclusion is that probable cause existed when defendant placed plaintiff under arrest. *See, e.g., United States v. Smith,* 790 F.2d 789, 792 (9th Cir.1986). Having seized plaintiff only after determining that probable cause existed, no triable issue of fact exists on plaintiff's Fourth Amendment claims.

■ Plaintiff alternatively argues that defendant's alleged fabrication of evidence (which will be taken as true for purposes of this motion) constitutes a violation of his fundamental rights, citing *Ricciuti v. N.Y.C. Transit Auth.,* 124 F.3d 123 (2nd Cir.1997), as support. In *Ricciuti,* defendants were arrested and accused of taking part in a street fight outside Yankee Stadium. With regards to at least one of the defendants, Alfred Ricciuti, there was probable cause to believe that he had committed an assault at the time he was arrested.[3] At some point during the investigation of this incident, a memoran-

dum appeared in the case file which allegedly recounted an officer's interview with Alfred in which he confessed to the assault and used a racial epithet. The contents of the memorandum made their way verbatim into subsequent investigation reports and, after referral to the district attorney, became the basis of a bias-related charge. Alfred vehemently denied that he ever confessed or used a racial epithet, and none of the involved officers had a specific recollection of the relevant interview. After the charges against him were dismissed, Alfred filed a § 1983 claim based on the fabrication of evidence. The Second Circuit's analysis on that claim is set forth in its entirety:

> [T]he primary argument of Officer Lopez and the other defendants goes not to the genuineness of the fact issues, but to their materiality. Each of the defendants insists that so long as there was probable cause for Alfred Ricciuti's arrest—independent of the allegedly fabricated evidence—the fabrication of evidence is legally irrelevant. In essence, they argue that as long as the arrest complied with the Fourth Amendment, the Ricciutis can have no claim for post-arrest fabrication of evidence against them.
>
> This argument—an ill-conceived attempt to erect a legal barricade to shield police officials from liability—is built on the most fragile of foundations; it is based on an incorrect analysis of the law and at the same time betrays a grave misunderstanding of those responsibilities which the police must have toward the citizenry in an open and free society. No arrest, no matter how lawful or objectively reasonable, gives an arresting officer or his fellow officers license to deliberately manufacture false evidence against an arrestee. To hold that police officers, having lawfully arrested a suspect, are then free to fabricate false confessions at will, would make a mock-

---

**3.** As noted by defendant, the evidence that was in the *Ricciuti* defendants' possession

when they arrested Alfred was very similar to that which was available to defendant here.

ery of the notion that Americans enjoy the protection of due process of the law and fundamental justice. Like a prosecutor's knowing use of false evidence to obtain a tainted conviction, a police officer's fabrication and forwarding to prosecutors of known false evidence works an unacceptable "corruption of the truth-seeking function of the trial process." *United States v. Agurs,* 427 U.S. 97, 104, 96 S.Ct. 2392, 2397, 49 L.Ed.2d 342 (1976); *Giglio v. United States,* 405 U.S. 150, 153, 92 S.Ct. 763, 765–66, 31 L.Ed.2d 104 (1972); *Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 341–42, 79 L.Ed. 791 (1935). When a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors, he violates the accused's constitutional right to a fair trial, and the harm occasioned by such an unconscionable action is redressable in an action for damages under 42 U.S.C. § 1983. *United States ex rel. Moore v. Koelzer,* 457 F.2d 892, 893–94 (3d Cir. 1972); *see also Smith v. Springer,* 859 F.2d 31, 34 (7th Cir.1988); *Geter v. Fortenberry,* 849 F.2d 1550, 1559 (5th Cir. 1988). Here, a reasonable jury could find, based on the evidence, that defendants Lopez and Wheeler violated the plaintiffs' clearly established constitutional rights by conspiring to fabricate and forward to prosecutors a known false confession almost certain to influence a jury's verdict. These defendant police officers are not entitled to summary judgment on the ground of qualified immunity. Qualified immunity is unavailable where, as here, the action violates an accused's clearly established constitutional rights, and no reasonably competent police officer could believe otherwise. *Anderson v. Creighton,* 483 U.S. [635, 641, 107 S.Ct. 3034, 3039–40, 97 L.Ed.2d 523 (1987) ].

Hence, we hold it was error for the district court to grant summary judgment to defendants Lopez and Wheeler on qualified immunity grounds with respect to the fabrication of evidence claim.

*Ricciuti,* 124 F.3d at 129–30.

■ While the Court agrees with the Second Circuit's underlying sentiment that falsification of government records, especially police reports in the context of a criminal proceeding, is abhorrent, not all wrongs, even when perpetrated by a government actor, are redressable under § 1983. As noted above, a § 1983 claim arises only where there has been a violation of a federal statutory or constitutional right: the district court must "isolate the precise constitutional violation with which [the defendant] is charged." *Devereaux v. Perez,* 218 F.3d 1045, 1051 (9th Cir.2000) (quoting *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)).

The Second Circuit identifies an accused's right to a fair trial, and possibly the right to due process, as the federal rights on which plaintiff's § 1983 claim was predicated in *Ricciuti.* While it is clearly possible that the provision of false information to the prosecutor and/or the jury could deprive a criminal defendant of his liberty and/or his right to a fair trial, such a calamity did not occur in either *Ricciuti* or this case. Both Alfred Ricciuti and Mr. Hennick were deprived of their liberty as a result of circumstances independent of the "confessions" insofar as defendants had probable cause to arrest them even in the absence of the fabricated evidence. *See Tomer v. Gates,* 811 F.2d 1240, 1242 (9th Cir.1987) (where the fabricated evidence did not result in a deprivation of a liberty or property interest, there having been independent reasons to find probable cause for plaintiff's arrest, plaintiff failed to identify the required violation of a constitutional right).[4] Further, plaintiffs' rights to a fair trial were not violated because the criminal charges against them

---

4. In both *Ricciuti* and this case, plaintiffs were actually placed under arrest before the    fabricated evidence came to light.

were never put to a jury (both cases being dismissed before trial). The most that can be said is that the false "confessions" had the potential to, but did not, impinge on plaintiffs' constitutionally protected rights. To the extent that defendants' conduct caused other forms of injury, such as extra defense costs, injury to reputation, prosecution with malice, emotional distress, etc., such injuries are not of constitutional dimension and cannot form the basis of a § 1983 claim.

For all of the foregoing reasons, the Court respectfully disagrees with the Second Circuit's holding in *Ricciuti.* The Court finds that, in the circumstances presented here, plaintiff has not identified any federal statutory or constitutional right the deprivation of which could give rise to a claim under § 1983. The Court therefore need not evaluate defendant's claim of qualified immunity.

## DEFAMATION

■ "[A] defamation plaintiff must show four essential elements: falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle Times,* 96 Wash.2d 473, 486, 635 P.2d 1081, (1981), *cert. denied,* 457 U.S. 1124, 102 S.Ct. 2942, 73 L.Ed.2d 1339 (1982). Defendant asserts that plaintiff cannot meet the second and fourth elements of this cause of action.

■ Defendant argues that his statements regarding plaintiff's "confession" are absolutely privileged because they were made in the course of his official investigation of a crime. No case law has been offered in support of this assertion, however. In fact, it appears that the type of investigative or fact-finding work that resulted in the extra-judicial statements at issue here falls outside the grant of absolute immunity that generally applies to judicial proceedings, legislative proceedings, and the acts of important government executives. *See Kalina v. Fletcher,* 522 U.S. 118, 131, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997) (prosecutor, who would be fully protected by absolute immunity when performing the traditional functions of an ad-

vocate, is not protected when performing the function of a complaining witness in obtaining a warrant); *Bender v. Seattle,* 99 Wash.2d 582, 600–01, 664 P.2d 492 (1983) (extra-judicial statements of police officers are not entitled to "the extraordinary breadth of an absolute privilege."); *Twelker v. Shannon & Wilson,* 88 Wash.2d 473, 475–78, 564 P.2d 1131 (1977) (absolute privilege not applicable to statements made prior to the initiation of legal proceedings and outside the supervision of some controlling influence).

Defendant may nevertheless be entitled to a qualified privilege under state law. *Bender,* 99 Wash.2d at 600–01, .664 P.2d 492. Such a privilege would protect defendant from liability unless plaintiff shows through clear and convincing evidence that the privilege was abused. *Mark,* 96 Wash.2d at 492, 635 P.2d 1081. "[K]nowledge or reckless disregard as to the falsity of a statement is necessary to prove abuse of a· qualified privilege." *Bender,* 99 Wash.2d at 601–02, 664 P.2d 492 (adopting Restatement (Second) of Torts § 600, at 288 (1977)). In this case, plaintiff alleges that he never admitted stealing the victim's handbag, and yet that is exactly what defendant published through his oral and written statements. Assuming, for purposes of this motion, that the "confession" was fabricated by defendant, he must have known that it was false when he reported it to his partner and placed it in the incident reports. Plaintiff's allegations and testimony create an issue of fact regarding the applicability of a qualified privilege in this case. Summary judgment is not appropriate on that ground.

Defendant also argues that plaintiff is unable to show damage as a result of defendant's .statements, asserting that plaintiff's later publication of his arrest was the cause of any injury to plaintiff's personal or professional reputation. In effect, defendant argues that plaintiff's repetition of defendant's statements, for any purpose, somehow nullifies whatever damage was done by defendant. No support is

offered for this proposition. Further, there is no evidence that plaintiff was actively broadcasting the allegedly false statements regarding his "confession." Any damage resulting from those statements may well arise solely from defendant's actions.

Because plaintiff has raised a genuine issue of fact regarding the applicability of a privilege and his ability to show damages, summary judgment on the defamation claim would be inappropriate.

## MALICIOUS PROSECUTION

As acknowledged by plaintiff, a claim for malicious prosecution requires a lack of probable cause and a showing of malice. Plaintiff's Brief in Opposition at 23. Even if the Court assumes that defendant fabricated plaintiff's "confession," and that such actions give rise to an inference of malice, the facts known to defendant at the time of plaintiff's arrest established probable cause independent of the alleged confession. Because defendant had probable cause to believe that plaintiff had committed the theft at issue, plaintiff's malicious prosecution action must fail.

## FALSE ARREST / FALSE IMPRISONMENT

"The gist of an action for false arrest or false imprisonment is the unlawful violation of a person's right of personal liberty or the restraint of that person without legal authority ...". *Bender,* 99 Wash.2d at 591, 664 P.2d 492. Having already concluded that defendant acted with probable cause when he arrested plaintiff, even in the absence of a "confession," there is no reason to believe that the restraint on plaintiff's personal liberty was "unlawful" or "without legal authority." Plaintiff's claim of false arrest/false imprisonment therefore fails as a matter of law.

## CONCLUSION

Regardless of whether plaintiff is ultimately able to prove that defendant fabricated his "confession," there was probable cause to believe plaintiff had committed a theft at the time of his arrest. Plaintiff's

Fourth Amendment, malicious prosecution, and false arrest/false imprisonment claims therefore fail as a matter of law. In addition, plaintiff's § 1983 claim must be dismissed because he has failed to identify any federal statutory or constitutional right that was violated by the alleged fabrication of evidence. There remain genuine issues of material fact regarding plaintiff's defamation claim, however, making summary judgment inappropriate on that cause of action.

For all of the foregoing reasons, defendant's motion for summary judgment is GRANTED as to the § 1983, malicious prosecution, and false arrest/false imprisonment claims and DENIED as to the defamation claim.