724 So.2d 163 (1998)
Dr. Glenn PARKER, Appellant,
v.
STATE OF FLORIDA BOARD OF REGENTS for and on behalf of the FLORIDA STATE UNIVERSITY, Appellee.
No. 96-1630
District Court of Appeal of Florida, First District.
December 28, 1998.
*164 John A. Rudolph, Jr. and Michael P. Spellman of Douglass & Rudolph, Tallahassee, for Appellant.
Edward S. Schwartz, Law Offices of Philip M. Gerson, P.A., Miami, for Amicus Curiae Academy of Florida Trial Lawyers.
Wendy S. Morris, Associate Counsel, Florida Board of Regents, Tallahassee, for Appellee.
VAN NORTWICK, J.
Dr. Glenn Parker, a professor employed by Florida State University, sued the State of Florida Board of Regents for fraudulent misrepresentation and breach of contract after his salary was not raised as allegedly promised. Following a jury verdict awarding Dr. Parker damages under both counts of his complaint, the trial court granted a judgment in favor of appellee, determining that Dr. Parker's claims were barred by the doctrine of sovereign immunity. For the reasons that follow, we agree with the trial court that the doctrine of sovereign immunity bars Dr. Parker's action for fraud; however, sovereign immunity does not bar his action and recovery of damages for breach of contract. Accordingly, the final judgment for the state is affirmed in part and reversed in part and the cause is remanded to the trial court with directions that final judgment be entered in favor of Dr. Parker in accordance with the jury verdict on the breach of contract count.

*165 Factual and Procedural Background

Dr. Parker and his wife were employed by Florida State University (FSU) when, in early 1990, they received offers of employment from the University of Texas at Dallas (UTD). UTD offered Dr. Parker an appointment as a professor of government and a $75,000 salary based on a nine-month year, among other things. At the time he received the offer, Dr. Parker was earning $59,425 per year at FSU. Following the UTD offer, Charles Cnudde, the FSU Dean of the College of Social Sciences, communicated to his supervisor, the FSU Vice President of Academic Affairs and Provost Augustus Turnbull, concerning the possibility that the Parkers might leave and take positions at UTD. Provost Turnbull informed Dean Cnudde that there was no salary pool from which to make a counteroffer to Dr. Parker, but that he would "support whatever commitment you [Cnudde] make from College resources."
In early April 1990, Dr. Parker, Dean Cnudde, and Dr. James Gwartney, Dr. Parker's direct supervisor, met in the dean's office and reviewed UTD's offer to Dr. Parker. Dean Cnudde informed Dr. Parker that the university could match the offer with the exception of the $75,000 salary; but that insufficient funds were available in the College of Social Sciences or through the provost to match the UTD offer. Nonetheless, according to Dr. Parker, Dean Cnudde promised that within three years he could come up with the necessary resources to match the $75,000 salary offered by UTD. This agreement was reduced to a written memorandum from Dean Cnudde to Dr. Parker dated April 24, 1990, which provided in pertinent part:
As you know, the Provost is not able to provide us with sufficient resources to match your salary offer. Our plan is to move you up to that level, and beyond, as soon as the University budget situation permits. Given the expectation of a very low salary increase budget for this year, I do not expect to be able to reach the salary in the mid-seventies prior to the end of the next three-year budget period.
Dr. Parker and his wife declined the offers from UTD and remained at FSU.
Over the next three years, Dr. Parker's salary was increased to the sum of $68,926 for the 1993-94 academic year. When a $75,000 salary was not forthcoming, Dr. Parker filed the instant action alleging fraudulent misrepresentation and breach of contract. With respect to the fraudulent misrepresentation claim, his complaint alleged that at all relevant times Dean Cnudde was acting within the course and scope of his employment with the university and was an authorized agent of the university. He alleged that at the time of the meeting in April 1990, and subsequent memorandum of April 24, 1990, that funds were available to match the UTD offer extended to Dr. Parker. Regarding the alleged fraudulent misrepresentation, the complaint states in pertinent part as follows:
22. Defendant's authorized agent, Dean Cnudde, made verbal and written misrepresentations to Plaintiff of material fact in April, 1990, ... that funds were not immediately available to match the salary amount contained in the [UTD] offer.
23. At the time that Dean Cnudde made the misrepresentations to Plaintiff ... Dean Cnudde had superior knowledge of the subject of availability of funds than Plaintiff, and was in a better position to ascertain the truth of his statements than Plaintiff.
24. At the time that Dean Cnudde made the misrepresentations to Plaintiff ... Dean Cnudde knew that the statements were false or, in the alternative, made the statements with reckless disregard as to their truth or falsity.
25. Dean Cnudde made the statements to Plaintiff ... with the specific intent of discouraging Plaintiff from accepting the [UTD] offer as well as ensuring that Plaintiff would remain as a professor within the College of Social Sciences at Florida State University.
26. Plaintiff accepted the statements of Dean Cnudde ... and thereby justifiably, reasonably and detrimentally relied upon Dean Cnudde's misrepresentations.
With respect to the breach of contract action, Dr. Parker alleged that the university did not meet its obligation to increase his *166 salary to $75,000 as promised, even though salary funds were available to meet this obligation, as evidenced by raises received by other faculty within the Department, and other discretionary funds were available sufficient to meet FSU's contractual obligation to Dr. Parker.
In its answer, among other things, the state admitted the complaint's allegations that at all times Dean Cnudde was acting within the course and scope of his employment and was an authorized agent of FSU. Although the state raised several affirmative defenses, it neither contended that the alleged contract of April 24, 1990 was illegal, because Dean Cnudde lacked the authority to enter into that contract, nor contended that Dr. Parker's claims were barred by sovereign immunity.
The case proceeded to trial at which evidence was introduced that, as early as March 1990, FSU possessed available funds for vacant faculty positions which could have been used to pay additional salary to Dr. Parker.[1]
At the close of Dr. Parker's case-in-chief, the state moved for a directed verdict on the fraudulent misrepresentation and breach of contract claims. The state argued then for the first time that Dean Cnudde was unauthorized to contract and bind the state to the April 24, 1990 contract with Dr. Parker, relying upon sections 240.227(5)[2] and 240.227(12),[3] Florida Statutes (1989). Regarding the fraud claim, the state argued that bad faith was inherent in every action for fraud and, therefore, the state cannot be held liable for the fraud committed by Dean Cnudde pursuant to section 768.28(9)(a), Florida Statutes (1989). The trial court denied the state's motion.
The state did not seek leave from the trial court to amend its answer or to add affirmative defenses raising sovereign immunity or illegality of the contract alleged. Further, the state did not request the trial court to instruct the jury or to include in the verdict form any issue relating to whether Dean Cnudde was authorized by FSU to enter into the contract with Dr. Parker or whether the dean acted in bad faith or with malicious purpose in committing the fraud.
With regard to the cause of action for fraudulent misrepresentation, the trial court gave the standard jury instruction on fraudulent misrepresentation, with some minor editorial changes, as follows:
[O]n the Plaintiff's second claim for fraudulent misrepresentation, the issues for your determination are, first, whether Dean Cnudde made a false statement concerning a material fact of Dr. Parker. Second, whether Dean Cnudde knew the statement was false when he made it or made the statement knowing he was without knowledge of its truth or falsity. Third, whether in making the false statement Dean Cnudde intended that Dr. Parker would rely on the false statement. Fourth, whether Dr. Parker actually did rely on the false statement. Fifth, whether Dr. Parker suffered a loss as a result.
* * *
The next issue for your determination on the second claim is whether the defendant had actual or implied knowledge that the representation was false.
You may find that Dean Cnudde had such knowledge if he made the misrepresentation deliberately, knowing that the statement was false or made the representation *167 without knowledge as to its truth or falsity....
The jury returned a verdict with written interrogatories finding that there was a contract between Dr. Parker and the state which the state breached damaging Dr. Parker in the amount of $65,000. Next, the jury found that employees of the state had made fraudulent misrepresentations to Dr. Parker damaging him in the amount of $86,450.
Thereafter, the state filed a motion for entry of judgment in accordance with its motion for directed verdict and/or judgment notwithstanding the verdict. In addition to previous arguments, in connection with its motion the state asserted that Dean Cnudde was prohibited from entering into the April 24, 1990 contract with Dr. Parker by section 287.0582, Florida Statutes (1989),[4] and rule 6C-5.211(3)(c), Florida Administrative Code.[5]
The trial court entered the order appealed, ruling that sovereign immunity barred both the fraud and contract claims. As to the fraudulent misrepresentation claim, the court ruled that while bad faith is not an express element of the cause of action for fraud, it is the gist of such cause of action and thus, section 768.28(9)(a), Florida Statutes (1989), precluded Dr. Parker's claim for fraudulent misrepresentation. Regarding Dr. Parker's contract claim, the court ruled that because Dr. Parker had failed to show the statutory authority for the state, through Dean Cnudde, "to enter into a contract supplemental to the annual appointment contracts for a certain salary and with an uncertain performance date which could be as long as three years," the state was protected by sovereign immunity from liability for breach of the April 24, 1990 contract.

Fraudulent Misrepresentation Claim
The issue presented here is whether as a matter of law the element of bad faith is inherent in any action for fraudulent misrepresentation[6] and, as a result, fraudulent misrepresentation claims against the state are barred by the doctrine of sovereign immunity pursuant to section 768.28(9)(a), Florida Statutes (1989).
Section 768.28(1), Florida Statutes (1989), provides that, subject to the limitations of section 768.28, a governmental agency is liable for:
injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of his office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state....
Section 768.28(9)(a) provides for sovereign immunity for acts committed by governmental employees acting within the course and scope of employment which are "committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." § 768.28(9)(a), Fla. Stat. (1989). Although the statute does not define "bad faith," under section 768.28(9)(a), "[b]ad faith has been equated with the actual malice standard." Ford v. Rowland, 562 So.2d 731, 734 (Fla. 5th DCA 1990) (citations omitted).
Dr. Parker argues that the trial court erred in ruling that bad faith is always inherent in a fraud claim. Dr. Parker reasons that bad faith would only be inherent in the fraud action if it had been alleged and proven that Dean Cnudde had actual knowledge of *168 the falsity of his representations. Dr. Parker contends that he neither alleged nor attempted to prove that Dean Cnudde knew his representations were false at the time they were conveyed. Instead, he alleged and proved that Dean Cnudde, who had superior knowledge regarding the availability of funds, was guilty of fraud because he made his statements without knowledge of their truth or falsity, which he argues is an alternative means of establishing scienter in a claim for fraudulent misrepresentation. See Fla. Std. Jury Instr. (Civ.) MI8. Thus, he submits, bad faith intent to deceive on the part of Dean Cnudde was not alleged or proven below. Moreover, Dr. Parker argues that had the state wanted the benefit of the sovereign immunity statute, it was required to introduce evidence supporting the defense and should have requested a special jury instruction on bad faith and a special interrogatory to the jury on the question of whether Dean Cnudde had acted in bad faith or with malicious purpose. Because no evidence was introduced and the jury was not asked to find bad faith, bad faith was not proven in this case. As a result, Dr. Parker contends, since fraud can exist without bad faith, the trial court erred in entering a final judgment for the state on the fraudulent misrepresentation count, citing McGhee v. Volusia County, 679 So.2d 729 (Fla.1996).
The state's entire argument is that for fraud to exist, as a matter of law, bad faith must also exist. We agree. Although our review of the law of fraud in Florida reveals that bad faith has not always been considered a necessary element of fraud, nor always the gist of that cause of action, First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536, 539 (Fla.1987), established that bad faith must always be considered a necessary element of fraud.
In Florida, legal scienter for purposes of fraud can be established in three ways. As stated in Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823, 824 (1947), quoting Wheeler v. Baars, 33 Fla. 696, 15 So. 584 (1894):
A false representation of a material fact, made with knowledge of its falsity, to a person ignorant thereof, with intention that is (sic) shall be acted upon, followed by reliance upon and by action thereon amounting to substantial change of position, is a fraud of which the law will take cognizance.
The knowledge, by the maker of the representation, of its falsity, or, in technical phrase, the scienter, can be established by either one of the three following phases of proof: (1) That the representation was made with actual knowledge of its falsity; (2) without knowledge either of its truth or falsity; (3) under circumstances in which the person making it ought to have known, if he did not know, of its falsity. Under the first phase the proof must show actual knowledge of the falsity of the representation. Under the second phase it should show that the representation was made in such absolute, unqualified, and positive terms as to imply that the party making it had knowledge of its truth, and that he made such absolute, unqualified, and positive assertion on a subject of which he was ignorant, and that he had no knowledge whether his assertion in reference thereto was true or false. Under the third phase, the proof should show that the party occupied such a special situation or possessed such means of knowledge as made it his duty to know as to the truth or falsity of the representation made. If the proof establishes either one of these three phases, the scienter is sufficiently made out.
See also Watson v. Jones, 41 Fla. 241, 25 So. 678 (1899); Hinson v. Drummond, 98 Fla. 502, 123 So. 913 (1929); Young v. Johnson, 538 So.2d 1387 (Fla. 2d DCA 1989); see also Restatement (Second) of Torts § 526 (1977). Thus, while malice or actual corrupt intent to deceive may be a central factual element in many fraud cases, under the second and third phases in Joiner, such intent is not always necessary to establish fraudulent misrepresentation, see Logan v. Logan, 22 Fla. 561, 566 (1886), nor is intent to commit fraud necessarily the gravamen of every cause of action for fraudulent misrepresentation, see Upchurch v. Mizell, 50 Fla. 456, 40 So. 29, 32 (1905).
In Ablanedo, the Florida Supreme Court held that "proof of fraud sufficient to support compensatory damages is sufficient to create *169 a jury question regarding punitive damages." Ablanedo, 511 So.2d at 539. The court explained that "[t]his is so because intentional misconduct is a necessary element of fraud." Id. As observed by the Third District Court of Appeal, under the rule established in Ablanedo:
Scienter, or guilty knowledge, is an element of intentional misconduct, which can be established by showing actual knowledge, or that the defendant was reckless or careless as to the truth of the matter asserted.
Ocean Bank of Miami v. Inv-Uni Inv. Corp., 599 So.2d 694, 697 (Fla. 3d DCA), rev. denied, 606 So.2d 1165 (Fla.1992).
Thus, under the broad rule announced in Ablanedo, bad faith must be deemed to be a necessary element of any action for fraud whether the fraud action is based on intentional misconduct or on reckless disregard for the truth. To the extent that prior Florida case law suggested otherwise, we conclude that such cases were overruled sub silencio by Ablanedo.
Under section 768.28(9)(a), the state is liable for the actions of Dean Cnudde within the scope of his employment unless he was acting in bad faith, with malicious purpose, or in a manner exhibiting wanton and willful disregard of human rights, safety or property. Because Dr. Parker's action for fraudulent misrepresentation per se contains the element of bad faith, Ablanedo, 511 So.2d at 539, the state cannot be liable for the fraudulent acts of Dean Cnudde even if the dean did not have actual knowledge of the falsity of these statements. Accordingly, the trial court's directed verdict in favor of the state on the fraudulent misrepresentation claim is affirmed.

Breach of Contract Claim
Turning to the contract claim, in Pan-Am Tobacco Corp. v. Department of Corrections, 471 So.2d 4, 5 (Fla.1984), the supreme court held that, where the state has entered into a contract fairly authorized by the powers granted by general law, the defense of sovereign immunity will not protect the state from an action arising from the state's breach of that contract. We agree with Dr. Parker that section 240.227(5) establishes the dean's contractual authority, because it allows the president of a university to appoint university personnel and provide for the compensation and other conditions of employment consistent with applicable collective bargaining agreements. Moreover, rule 6C-5.111(1)(b)2., Florida Administrative Code, (repealed 1996), allowed the president or the president's designee to give additional salary increases at times other than the time of a faculty member's annual salary increase. The overwhelming evidence presented at trial showed that Dean Cnudde regularly performed these functions within the college on behalf of the president. The dean executed annual faculty appointments prior to each academic year and he had the authority to give discretionary increases through the annual budgeting process with monies available in the college. Further, and significantly to the instant case, Provost Turnbull wrote a memo to Dean Cnudde advising the dean that the provost would support whatever measures the dean took to keep Dr. Parker.
We also agree with Dr. Parker that section 287.0582, Florida Statutes (1989), does not apply to the instant contract. Section 287.0582 prohibits a public officer from entering into a contract on behalf of the state "for the purchase of services or tangible personal property for a period in excess of 1 fiscal year" unless the payment is made contingent on legislative appropriation. As used in section 287.0582, "the purchase of services" refers to contractual services which are defined in section 287.012(4)(a) as applying only to those services rendered by independent contractors. Tenured faculty are considered permanent employees of the university, not independent contractors. See rule 6C-5.225(2)(b), Fla. Admin. Code (repealed 1996). Thus, section 287.0582 does not apply here.
Rule 6C-5.211(3)(c), Florida Administrative Code (repealed 1996) is equally inapplicable. Rule 6C-5.211(3)(c) provides that a faculty contract or letter of appointment shall not be for a term exceeding one year. Dr. Parker's breach of contract action, however, was based upon a conditional contract which *170 was capable of being performed by FSU within one year. Dean Cnudde committed to increasing Dr. Parker's salary as soon as the university budget situation permitted; and the undisputed evidence in the record established that the budget permitted the dean to raise Dr. Parker's salary to $75,000, as committed to by the dean, within 12 months of the April 24, 1990 letter.
In summary, we hold that the state is not entitled to sovereign immunity on Dr. Parker's breach of contract claim. It is clear from this record that Dean Cnudde was acting within the scope of his employment when he entered into the contract with Dr. Parker. The state admitted in its answer and in the pretrial stipulation that, at all times, "Dean Cnudde acted within the course and scope of his employment with the defendant and was an authorized agent of the defendant." Further, Dean Cnudde possessed the general authority under section 240.227(5) and rule 6C-5.111(1)(b)2., along with the specific grant of authority from Provost Turnbull, to contract with Dr. Parker.
In addition, the April 24, 1990 letter was a conditional contract to raise Dr. Parker's salary "as soon as the budget situation permits." There was an abundance of evidence before the jury to support a finding that funds available in the budget permitted the dean to raise Dr. Parker's salary within the first academic year, or in the 1990-91 academic year. Thus, whether the dean could bind the state to a multi-year contract is not determinative, because evidence was introduced that the contract was capable of performance within one year. Had the state wanted a specific finding otherwise, it should have submitted this issue to the jury as well.
AFFIRMED in part, REVERSED in part, and REMANDED with directions that final judgment be entered in favor of Dr. Parker in accordance with the jury verdict on the breach of contract count.
BOOTH and WOLF, JJ., concur.
NOTES
[1] The record reflects that each faculty member is given a legislative "line" for budgeting purposes. If the faculty member vacates that position, the line becomes vacant. In the past, vacant lines were used primarily for recruiting new faculty. Nevertheless, if a line was not filled during the budget year, the record evidence reflects that the college could use the line for hiring temporary employees, purchasing supplies and equipment and other costs. There was evidence that before 1990, the College of Social Sciences did not use vacant lines to meet counteroffers, but by 1991 there were documented instances in which vacant faculty lines were being "raided" to make counteroffers.
[2] Section 240.227(5) gives each university president authority to appoint university personnel and provide their compensation.
[3] Section 240.227(12) gives each university president the authority to execute contracts for goods, equipment, and services, including educational services.
[4] Section 287.0582, Florida Statutes (1989), prohibits a public officer from entering into a contract on behalf of the state "for the purchase of services or tangible personal property for a period in excess of 1 fiscal year," unless the contract contains a statement to the effect that payment under the contract is contingent upon legislative appropriation.
[5] Rule 6C-5.211(3)(c), Fla. Admin. Code (repealed 1996), provides, in pertinent part, that a faculty contract or letter of appointment shall not exceed one year.
[6] Dr. Parker does not base his cause of action on negligent misrepresentation. The distinctions between fraudulent misrepresentation and negligent misrepresentation are discussed in Gilchrist Timber Co. v. ITT Rayonier, Inc., 696 So.2d 334 (Fla.1997).