[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-13581
Non-Argument Calendar
_____

D.C. Docket No. 9:14-cv-80815-RLR

VINCENZO GURRERA,

Plaintiff - Appellant,

versus

PALM BEACH COUNTY SHERIFF'S OFFICE,
FLORIDA DEPARTMENT OF FINANCIAL SERVICES, DIVISION OF
INSURANCE FRAUD,
STATE OF FLORIDA DIVISION OF CORPORATIONS,
CITY OF BOYNTON BEACH,
JOHN CARDASCIA,
Individually, and in his official capacity as a member of the Palm Beach County
Sheriff's Office, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 1, 2016)

Before TJOFLAT, JULIE CARNES, and JILL PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff Vincenzo Gurrera appeals the dismissal of his claims arising out of two arrests in connection with an insurance scam. After careful review, we affirm.

## I.    Background

On April 15, 2012, the Palm Beach County Sheriff's Office and the Florida Department of Financial Services initiated a joint investigation into Plaintiff and his auto body repair shop, Collision World. Defendants Deputy John Cardascia and Detective Stacey Spirn were assigned to the investigation. After interviewing witnesses about their interactions with Plaintiff, Defendants obtained four probable cause affidavits in support of an arrest warrant for engaging in insurance activities without a license, in violation of Fla. Stat. § 626.112(9). That statute prohibits any person from "knowingly transact[ing] insurance or otherwise engag[ing] in insurance activities in this state without a license in violation of this section." *Id.* Prohibited activities under that section include acting as an adjuster without a license or holding oneself out to be a service representative or managing general agent without a license. § 626.112(3)–(5).

According to these affidavits, Plaintiff would contact people recently involved in car accidents and represent, or at least strongly imply, that he had been sent by their insurance companies to help facilitate car repairs. Then he would get

2

those individuals to sign releases turning their cars over to Collision World.

Plaintiff claims that these affidavits contained fabricated statements regarding

Plaintiff's activities and omitted exculpatory evidence, such as the fact that his

business card, as well as the paperwork he had his purported victim sign, identified

Collision World, not an insurance company.  Plaintiff was arrested on May 22,

2012, but prosecutors later entered a *nolle prosequi* on February 20, 2013.

On July 9, 2012, Plaintiff was arrested a second time.  Plaintiff was again

accused of engaging in insurance activities without a license, Fla. Stat.

§§ 626.112(9), and was also accused of committing insurance fraud by knowingly

presenting an oral or written statement containing materially false or misleading

information as part of a claim for payment under an insurance policy, Fla. Stat.

§ 817.234(1)(a)(1).  The second arrest was executed without a warrant, although

Spirn had signed a probable cause affidavit on July 5, 2012.  According to that

affidavit, Plaintiff told an insured that he worked with 21st Century Insurance and

needed to get the insured to sign some paperwork so he could repair the car.  The

insured thought he signed papers for 21st Century, but he released his car to

Plaintiff.  Plaintiff denies ever billing the insurance company for the repairs.  On

August 30, 2012, the State of Florida entered a "no file" in the case and thus

terminated the action before filing any charges.  *See Purchase v. State*, 866 So.2d

208, 209 (Fla. Dist. Ct. App. 2004) (explaining that a "no action" is the voluntary

termination of proceedings before an information or indictment has been filed);

*Cordero v. State*, 686 So.2d 737, 738 (Fla. Dist. Ct. App. 1997) (using the terms

"no action" and "no file" interchangeably).

On June 20, 2014, Plaintiff sued Deputy Cardascia and Detective Spirn in

their individual capacities, the Palm Beach County Sheriff's Office, Sheriff Ric

Bradshaw in his official capacity, and the Florida Department of Financial Services

and its CFO, Jeff Atwater, in his official capacity.[1]  Plaintiff asserted numerous

claims under state and federal law, all of which relied on his allegations that no

probable cause existed for his arrest and that Defendants fabricated evidence to

support probable cause.  The court granted Defendants' motions to dismiss but

instructed Plaintiff to file a motion for leave to file an amended complaint.  The

court ordered Plaintiff to clarify the factual premise of his claims and to address

the issues Defendants raised.  The court later struck Plaintiff's first amended

complaint because it failed to comply with the court's orders, and the court warned

Plaintiff not to bring new claims in his amended complaint, as the extended

deadline for amended pleadings had already passed.  The court warned that failure

to comply with its orders could result in dismissal with prejudice.  Plaintiff filed a

second amended complaint, which is now the operative complaint in this action.

---

[1]  Plaintiff also sued the City of Boynton Beach, but he dropped that party in his second amended complaint.

Defendants again moved to dismiss.  The court granted the motions, finding that Defendants Cardascia and Spirn were entitled to qualified immunity for the federal claims and immunity under Florida law for the state tort claims.  The court further dismissed the new individual-capacity claims against Sheriff Bradshaw and Atwater because the court had forbidden Plaintiff from bringing new claims in his second amended complaint.  Finally, the court rejected the official-capacity claims against Sheriff Bradshaw and Atwater, as well as the claims against the Palm Beach County Sheriff's Office and Department of Financial Services.

## II.    Discussion

We review *de novo* a dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), and we accept the factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).  To survive a motion to dismiss, a complaint must contain sufficient factual matter which, accepted as true, states a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  This standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  And while we liberally construe *pro se* pleadings, this leniency does not give courts

license to serve as de facto counsel or permit them to rewrite an otherwise deficient pleading. *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014).

Plaintiff appeals only the federal and state claims against Deputy Cardascia and Detective Spirn, the federal official-capacity claims against Sheriff Bradshaw, and the federal claims against the Palm Beach County Sheriff's Office.

## A.    Federal-Law Claims against Cardascia and Spirn

Plaintiff alleges constitutional violations by Cardascia and Spirn under 42 U.S.C. § 1983 arising from the two arrests. For the most part, these allegations sound in false arrest and malicious prosecution. These allegations, however, are conclusory. For example, Plaintiff alleges that Defendants "caused the prosecution to be continued against Vincenzo Gurrera when they knew or should have known that said prosecution was without probable cause" and "when they knew or should have known that Gurrera did not commit the alleged crimes because they possessed exculpatory evidence and fabricated other evidence." To the extent Plaintiff's factual allegations contained in the rest of the second amended complaint pertained to his § 1983 claim, the court found that Cardascia and Spirn were entitled to qualified immunity because they had, at a minimum, arguable probable cause to arrest Plaintiff.

Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct "violate[s]

6

clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A defendant official is entitled to qualified immunity unless a plaintiff can demonstrate both that the officer committed a constitutional violation and that the right at issue was "clearly established" at the time of the alleged misconduct. *Singletary v. Vargas*, 804 F.3d 1174, 1180 (11th Cir. 2015).

Both malicious prosecution and false arrest require a plaintiff to show a lack of probable cause. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (federal malicious prosecution claim requires showing of common law elements of malicious prosecution, including lack of probable cause); *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990) (existence of probable cause is absolute bar to a § 1983 claim for false arrest). Probable cause exists "where the facts and circumstances within the collective knowledge of the law enforcement officials, of which they had reasonably trustworthy information, are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Pantoja-Soto*, 739 F.2d 1520, 1523 (11th Cir. 1984) (quotation marks omitted). "Although probable cause involves a greater certainty of criminal behavior than reasonable suspicion, probable cause does not require the same 'standard of conclusiveness and probability as the facts necessary to support a conviction.'" *United States v. Lindsey*, 482 F.3d 1285, 1291 (11th Cir. 2007)

7

(quoting *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003)).  To be entitled to qualified immunity, an officer need only have had "arguable" probable cause.  *Kingsland*, 382 F.3d at 1232.  Thus, Plaintiff "must demonstrate that no reasonable officer could have found probable cause under the totality of the circumstances."  *Id.*  Furthermore, we have held that officers are not entitled to qualified immunity if they "fabricated or unreasonably disregarded certain pieces of evidence to establish probable cause or arguable probable cause."  *Id.* at 1233.  But qualified immunity still applies if the officer reasonably but mistakenly believed that probable cause was present.  *Grider v. City of Auburn*, 618 F.3d 1240, 1256 (11th Cir. 2010).

With respect to the first arrest, Plaintiff alleges that Cardascia and Spirn both fabricated evidence in four probable cause affidavits, each of which described witness statements concerning Plaintiff's alleged fraud.  Plaintiff alleges that transcripts from witness interviews conclusively demonstrate that the statements in the affidavits were false.[2]  Viewing Plaintiff's allegations in conjunction with the

---

[2]  Plaintiff repeatedly refers to these probable cause affidavits and interview transcripts in his second amended complaint.  While he attached these documents to his original complaint, thereby incorporating them into the complaint, *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005), he did not attach them to his second amended complaint.  Nevertheless, Plaintiff has not challenged Defendants' reliance on these documents, nor does he appeal the district court's use of them in dismissing his complaint.  Moreover, we have held "that a document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, we may consider such a document provided it" is central to a plaintiff's complaint.  *Id.*  Because Plaintiff extensively

affidavits and transcripts he quotes, however, we agree with the district court that Plaintiff fails to state a plausible claim for relief—even when construing those documents in his favor.

Specifically, Plaintiff accuses Detective Spirn of falsely stating in an affidavit that Plaintiff told witness Elizabeth Ranalli that he worked *for* the insurance companies involved in Ranalli's accident. Plaintiff points to a place in the interview transcript where Ranalli said that Plaintiff told her he "worked *with* both Liberty Mutual, [Ranalli's] insurance company[,] and Geico," the other party's insurer. This statement, Plaintiff argues, shows he never held himself out to be a representative of an insurer and "should have immediately exonerated [him] from any wrongdoing whatsoever." But even construing Ranalli's interview statements in Plaintiff's favor, it is clear she believed that Plaintiff "was associated with both insurance companies" through some kind of contractual agreement, especially considering Plaintiff contacted Ranalli directly a few hours after the crash and helped arrange for her to get a rental car. So when she actually spoke to her insurer, she "realized that something was probably wrong" and then had to "battle" with Plaintiff to get her car back and take it to another shop that was

discusses and quotes from the affidavits and transcripts and does not argue that we should not rely on them, we consider these materials in our analysis.

9

actually associated with Liberty Mutual.  Nothing in the Ranalli affidavit or transcript suggests Defendants fabricated anything.

The same is true for the other three affidavits pertaining to the first arrest. Mary Anne Hall said Plaintiff contacted her within 24 hours of her car accident, and when she asked him if he was from State Farm, he said "no," but that they "sometimes work together," "implying the entire time" that he was "hired" or "outsourced" by State Farm.  Hall even complimented Plaintiff on State Farm's promptness in sending her a "representative," yet Plaintiff did not correct her. Plaintiff insists that Hall was not trying to explain that Plaintiff was an insurance agent or adjuster.  Still, Hall thought Plaintiff represented the insurance company in some capacity, so Plaintiff's interpretation does not plausibly establish that Defendants fabricated evidence.

Yet another person reported similar interactions with Plaintiff.  According to Calix St. Hilaire's interview, Plaintiff said he was a Geico agent.  When St. Hilaire learned that Geico was unaffiliated with Plaintiff, he demanded that Plaintiff release his vehicle.  And a fourth person, Daniel Schmidt, said in his interview that he contacted Geico after an accident and then got a phone call from Plaintiff a few hours later.  Schmidt said that Plaintiff identified himself as an adjuster with Geico and told Schmidt to sign something so Plaintiff could do the adjustment on the

vehicle.  Viewing the probable cause affidavits and interview transcripts together, Plaintiff fails to plausibly allege that Defendants fabricated any evidence.

Plaintiff also repeatedly alleges that Defendants failed either to heed or to elicit exculpatory evidence.  Plaintiff specifically alleges that Defendants knew he gave out his Collision World business card, not a business card representing he was from an insurance company, and that the paperwork people signed had Collision World's information on it.  Even so, we reiterate that officers are permitted to judge probable cause based on the totality of the circumstances and may take into account "reasonably trustworthy information."  *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)).  We have recognized that an officer "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."  *Kingsland*, 382 F.3d at 1229 (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997)).  But conducting an investigation in a biased manner by failing to obtain easily discoverable facts without independently corroborating an allegation might violate the Fourth Amendment.  *See id.*  Plaintiff's allegations show that Defendants got reports from four people who gave consistent stories about how Plaintiff led them to believe he was some type of representative from their insurance companies.  Even though Plaintiff handed out Collision World business cards, Defendants had reasonably trustworthy information that all four

11

witnesses were misled and thus had arguable probable cause to believe Plaintiff was holding himself out to be an insurance agent, representative, or adjuster without a license in violation of Fla. Stat. § 626.112(9).

The second arrest, which took place without a warrant, resulted from Joseph Ehrlich and 21st Century Insurance's complaints that Plaintiff had represented himself to be an adjuster for 21st Century and billed 21st Century for services not performed. Plaintiff quotes a letter, again attached to his first complaint, in which Ehrlich explained to investigators that he received a call from Plaintiff shortly after an accident, and he assumed Plaintiff was from his insurance company because Plaintiff had all his contact information and knew about the wreck. Ehrlich said he later signed an agreement with Plaintiff before finding out that Plaintiff was instead associated with Collision World. Ehrlich felt "taken advantage of" and said he never would have met with Plaintiff if he had known Plaintiff was not from the insurance company. Based on these statements alone, Defendants had arguable probable cause to believe Plaintiff had again posed as a representative from an insurance company, in violation of Fla. Stat. § 626.112(9).[3] In sum, the district

---

[3] Plaintiff alleges that he never billed the insurance company for repairs to Ehrlich's car. We understand this argument to mean that Plaintiff did not submit false statements in support of an insurance claim, in violation of Fla. Stat. § 817.234(1)(a), the other stated basis for Plaintiff's second arrest. But even if Defendants lacked probable cause with respect to that offense, there was still arguable probable cause sufficient to support Plaintiff's arrest under Fla. Stat. § 626.112(9). *See Skop v. City of Atlanta*, 485 F.3d 1130, 1137–38 (11th Cir. 2007) (even if an officer ended up not having probable cause to arrest for one crime, there is no Fourth Amendment violation if there was probable cause to arrest for another crime).

court properly dismissed the federal claims against Cardascia and Spirn based on qualified immunity.

###### B.    State-Law Claims against Cardascia and Spirn

Plaintiff alleges several state-law claims against Cardascia and Spirn, including intentional infliction of emotional distress, false arrest, malicious prosecution, injurious falsehood, tortious interference with business, defamation, and violations of Florida's RICO statute.  Defendants assert individual immunity under Florida's sovereign immunity statute.  Under Florida law,

> No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function, unless such officer, employee or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Fla. Stat. § 768.28(9)(a).  Thus, absent a showing of bad faith, malicious purpose, or wanton and willful disregard of human rights, safety, or property, Cardascia and Spirn are entitled to immunity.  *Id.*  Florida courts equate bad faith with the actual malice standard.  *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So.2d 163, 167 (Fla. Dist. Ct. App. 1998).

Plaintiff again relies on his allegations that Defendants fabricated evidence and concealed exculpatory evidence.  As explained above, Plaintiff fails to plausibly allege such wrongdoing.  To the extent Plaintiff's allegations establish

Defendants' negligence, Defendants are still entitled to immunity because negligence alone falls short of actual malice. *Cf. Lloyd v. Hines*, 474 So.2d 376, 379 (Fla. Dist. Ct. App. 1985) (officers not entitled to immunity under § 768.28(9)(a) when they used fraud or corrupt means to obtain warrant). Plaintiff suggests no other reason why we should reinstate his state-law claims. Because Plaintiff has not plausibly alleged actual malice, the district court correctly found that Cardascia and Spirn are entitled to immunity from the state-law claims.

### C.    Official-Capacity Claims against Sheriff Bradshaw and Claims against the Palm Beach County Sheriff's Office

Plaintiff named the Palm Beach County Sheriff's Office as a Defendant, but he did not allege claims against it. However, official-capacity claims against an officer are "simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (quotation marks omitted). Therefore, the official-capacity claims alleged against Sheriff Bradshaw are in reality claims against the Palm Beach County Sheriff's Office, and we analyze them together. *See id.*

Plaintiff appeals the dismissal of his § 1983 claims against the Sheriff's Office for malicious prosecution and false arrest.[4] The court found that Plaintiff had failed to state a claim against the Sheriff's Office under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). In *Monell*, the Supreme Court held that a

---

[4] Plaintiff does not appeal the dismissal of his state-law claims against the Sheriff's Office.

14

local-government entity cannot be held liable under § 1983 using a *respondeat superior* theory for injuries caused solely by its employees.  *Id.* at 694.  Instead, to impose municipal liability under § 1983, a plaintiff must allege facts showing: "(1) that his constitutional rights were violated; (2) that the municipality had a custom or policy that constituted deliberate indifference to that constitutional right; and (3) that the policy or custom caused the violation."  *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004).  The custom or policy must be the "moving force" behind the constitutional deprivation for a court to find sufficient causation. *Monell*, 436 U.S. at 690–94.  We thus note at the outset that Plaintiff's claim against the Sheriff's Office fails because he failed to adequately allege an underlying constitutional violation.  But even if he had, Plaintiff still fails to allege a custom or policy that would justify liability under *Monell*.

Even when a plaintiff identifies no unconstitutional formal policy, "an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law."  *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).  "A pattern of similar constitutional violations . . . is 'ordinarily necessary,'" *Craig v. Floyd County*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Connick v. Thompson*, 563

U.S. 51, 62 (2011)), because a single violation is not so pervasive as to amount to a custom. *Grech v. Clayton County*, 335 F.3d 1326, 1330 (11th Cir. 2003).

The district court found that Plaintiff failed to allege that any custom or policy of the Sheriff's Office caused his injuries. On appeal, Plaintiff insists that the district court failed to accept his allegations that:

> (a) the Sheriff's Department ratified or approved Cardascia's misconduct by failing to discipline Cardascia after the criminal prosecution was terminated in Gurrera's favor, (b) the Sheriff's Department ratified or approved Cardascia's misconduct by allowing Cardascia to continue to tortiously interfere with Gurrera's business after the criminal prosecution was terminated in Gurrera's favor, (c) the Sheriff's Department engaged in a pattern of conduct showing a willful disregard for citizens' rights as well as a failure to train Cardascia, and, (d) the Sheriff's Department has paid millions of dollars for civil rights violations.

Plaintiff's allegations, however, do not plausibly support these assertions. Plaintiff merely alleges that "[m]embers of the Palm Beach County Sheriff's office were intentionally and/or incompetently trained and/or supervised and/or disciplined[,] which was the moving force behind individual officers violating the constitutional rights of citizens." Other conclusory allegations include that there was "a pattern . . . of obtaining coerced and false statements," there was "a pattern and practice of engaging in false arrests, imprisonment, [and] false prosecution," and the Sheriff's Office has "failed to properly correct the obvious deficiencies which caused the injuries to Gurrera and others." Setting aside these conclusory allegations, Plaintiff fails to identify any examples beyond his own arrest of

16

widespread unconstitutional conduct. *See Craig*, 643 F.3d at 1311–12 (plaintiff failed to establish an unconstitutional custom or policy sufficient to impose municipal liability when he relied only on his own experience). Accordingly, Plaintiff's § 1983 claims against the Sheriff's Office fail to state a claim under *Monell*.

## III.    Conclusion[5]

For all the foregoing reasons, we affirm the dismissal of Plaintiff's second amended complaint.

**AFFIRMED.**

---

[5] Plaintiff argues that, as a *pro se* litigant, he should have been granted another opportunity to amend his complaint before the district court dismissed his claims with prejudice. However, Plaintiff does not suggest what amendments would cure his complaint's failure to state a claim. The district court gave Plaintiff two chances to file an amended complaint that addressed the deficiencies identified in the court's orders. Our precedent does not require affording *pro se* plaintiffs multiple opportunities to amend. *See Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc) (*pro se* plaintiff "must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice"). Consequently, the district court did not abuse its discretion by dismissing the second amended complaint with prejudice. *See Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (abuse of discretion standard applies to court's denial of leave to amend).