[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-12075

Non-Argument Calendar

_____

JANET BARR,

Plaintiff-Appellant,

*versus*

DETECTIVE DAVID DENMARK,
DETECTIVE NIRSO PIMENTEL,

Defendants-Appellees,

DETECTIVE DANIEL RIVERS, et al.,

Defendants.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:22-cv-20521-DPG

_____

Before NEWSOM, GRANT, and BRASHER, Circuit Judges.

PER CURIAM:

Janet Barr was arrested, tried, and acquitted for the murder of her husband. She sued four detectives involved in her arrest for false arrest and malicious prosecution under state and federal law. She argues that the district court erred in dismissing her claims because the detectives were not entitled to qualified immunity and because her claims did not otherwise fail as a matter of law. Because we conclude that the district court did not err in dismissing Barr's claims, we affirm.

**I.**

In our recitation of the facts, we consider both Barr's amended complaint and the arrest warrant and supporting affidavit. The arrest warrant and supporting affidavit are referenced in the complaint, central to Barr's claims, and of undisputed authenticity. *See Hi-Tech Pharms., Inc. v. HBS Int'l Corp.*, 910 F.3d 1186, 1189 (11th Cir. 2018) ("Under the doctrine of incorporation by reference, we may . . . consider documents attached to the motion to dismiss

if they are referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.").

Barr's husband was shot and killed outside of their home. At the time of his killing, Barr and Veronica Spencer, her goddaughter, were inside the house. Barr called 911 to obtain help, and, soon thereafter, Detective David Denmark and others arrived on the scene. Denmark interviewed Barr and Spencer and tested their hands for gunshot residue. Both tests returned negative.

During the police's initial investigation of the killing, they discovered that Barr received money as the beneficiary of her husband's life insurance policy. According to Barr, she used the insurance proceeds to pay for her husband's funeral.

Six years after the killing, the police learned that William Taylor—an inmate and Janet Barr's half-cousin—had information about the killing that he was willing to share in return for a release from his prison sentence. Taylor told Detectives Denmark and Nirso Pimentel that Barr offered Taylor $20,000 to kill her husband. Taylor explained that he refused to kill Barr's husband but nevertheless agreed to be present for the murder to make sure it "got done correctly." Taylor further informed the officers that Barr had asked Tristan Semper, another inmate, to kill her husband. The officers then met with Semper, who told them that Barr offered "to pay him between $10,000.00 and $15,000.00 from insurance proceeds" to kill her husband, which he declined to do.

Taylor informed officers that Barr successfully hired a man named "J Loo" to kill her husband. According to Taylor, on the

night of the murder, he and J Loo drove to Barr's house. Taylor watched J Loo get out of the vehicle with a dark colored revolver and, a short time later, heard two gunshots. Taylor did not witness the killing itself but saw J Loo return to the vehicle. Upon entering the vehicle, J Loo told Taylor that he had killed Barr's husband. Taylor asked J Loo why he had fired twice, and J Loo responded that the first shot missed because Barr's husband had turned away. According to Semper, Barr called him a week later and told him that her husband had been killed during a robbery.

In light of this information, Detective Denmark applied for—and received—an arrest warrant for Barr. His supporting affidavit explained that there was no evidence of a robbery at the crime scene and that Barr received money as the beneficiary of her husband's life insurance policy. It recounted Taylor's information—about J Loo, Barr, and the night of the killing—and acknowledged that Taylor was in jail when he provided it. The affidavit also noted that the autopsy corroborated key details of Taylor's story. Specifically, Barr's husband had stippling on his nose, but no gunshot wound on the front of the face, indicating that a shot was fired near his face from close range but did not strike him. Moreover, the fatal gunshot wound was to the back of the neck, which would not have caused the stippling to the face and is consistent with Barr's husband turning around.

Barr was arrested on one count of murder in the first degree and one count of conspiracy to commit murder in the first degree. She was tried, and a jury acquitted her of all charges.

Barr sued Detectives Denmark, Pimentel, Daniel Rivers, and Maria Mederos in their individual capacities. She alleged section 1983 claims for false arrest, malicious prosecution, and abuse of process, as well as Florida state law tort claims for false arrest and malicious prosecution. Barr was unable to serve Rivers and Mederos, and, as a result, the district court dismissed them from the action without prejudice. Soon thereafter, Denmark and Pimentel moved to dismiss Barr's complaint, asserting qualified immunity. Before the district court ruled on the motion to dismiss, Barr filed an amended complaint, again raising section 1983 and state law claims for false arrest and malicious prosecution. Barr's amended complaint renewed these claims as to Rivers and Mederos.

The detectives moved to dismiss, arguing that the existence of probable cause and a valid arrest warrant foreclosed Barr's claims. They further argued that they were entitled to qualified immunity on Barr's section 1983 claims and that statutory immunity barred her state law false arrest claim. The district court largely agreed with the detectives' arguments and granted their motion to dismiss on those bases. When doing so, it dismissed Barr's claims against Denmark and Pimentel with prejudice—but because Barr had again failed to serve Rivers and Mederos, it dismissed Barr's claims against them without prejudice.

Barr appealed.

## II.

We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Glover v. Liggett Grp., Inc.*, 459 F.3d 1304, 1308 (11th Cir. 2006).

## III.

Barr raises federal and state claims. The district court dismissed the federal claims for failure to state a claim and because of qualified immunity. The district court dismissed the state claims because it concluded that the existence of a warrant extinguished those claims.

We will begin with Barr's federal claims. Under our precedents, a false arrest occurs *without* legal process, whereas a malicious prosecution occurs "*pursuant* to legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) (emphasis added). The issuance of a warrant constitutes legal process—so a plaintiff who asserts a false arrest claim, after being arrested pursuant to a warrant, actually asserts a malicious prosecution claim. *Id.*

Because Barr alleges that she was arrested pursuant to a warrant, Barr's complaint asserts a malicious prosecution claim, not a false arrest claim. To succeed on a claim of malicious prosecution, Barr must prove that (1) the detectives violated her Fourth Amendment right to be free from seizures pursuant to invalid legal process and (2) the criminal proceedings against her terminated in her favor. *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020). At the motion to dismiss stage, Barr may establish that the detectives violated her Fourth Amendment right to be free from seizures pursuant to legal process by alleging that the detectives "intentionally or

recklessly made misstatements or omissions necessary to support the warrant" that justified her seizure. *Id.* Nevertheless, intentional or reckless omissions will not invalidate a warrant unless "inclusion of the omitted facts would have prevented a finding of probable cause." *United States v. Lebowitz*, 676 F.3d 1000, 1010 (11th Cir. 2012).

Although the criminal proceedings terminated in Barr's favor, Barr's malicious prosecution claim fails because she points to neither a misstatement nor an omission in Denmark's supporting affidavit necessary to support the warrant. Her only meaningful allegation on this score is that the affidavit omitted that Taylor and Semper "were convicted felons that were seeking release from jail and probable prison sentences at the time they made their statements." But the affidavit expressly acknowledged that Taylor, the primary witness, was incarcerated when he spoke with the detectives. The omission of information about his felony status would not have undermined the warrant or prevented a finding of probable cause. The information provided by Taylor and Semper—about Barr's requests to them, the circumstances surrounding the murder, the details of Barr's husband's death, and the existence of a life insurance policy—was comprehensive and corroborated. Our precedents recognize that "[a]ffidavits supporting warrants are presumptively valid," and Barr has not overcome that presumption. *Lebowitz*, 676 F.3d at 1010. Accordingly, the district court did not err in concluding that Barr failed to state a claim under section 1983.

We turn now to Barr's state claims. As for Barr's state law false arrest claim, under Florida law, an arrest made pursuant to a warrant is categorically not "false." *Jackson v. Navarro*, 665 So. 2d 340, 340 (Fla. Dist. Ct. App. 1995). Accordingly, this claim is extinguished for the same reason as her section 1983 false arrest claim. As for Barr's state law malicious prosecution claim, under Florida law, "the existence of probable cause will defeat a claim for malicious prosecution." *DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1309 (11th Cir. 2019); *see also Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1357 (Fla. 1994). Accordingly, this claim is extinguished for much the same reasons as her section 1983 malicious prosecution claim.

But even if we were wrong about these elements of state-law false arrest and malicious prosecution, Florida's sovereign immunity statute provides, in relevant part, that "[a]n officer, employee, or agent of the state" may not be held personally liable "for any injury or damage suffered as a result of any act, event, or omission of action in the scope of [his] employment" unless he "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." Fla. Stat. § 768.28(9)(a). Florida courts equate bad faith with the actual malice standard. *Parker v. State of Fla. Bd. of Regents ex rel. Fla. State Univ.*, 724 So.2d 163, 167 (Fla. Dist. Ct. App. 1998). And nothing in Barr's amended complaint suggests that the detectives acted with actual malice. The district court did not err in dismissing Barr's state law claims.

**IV.**

24-12075            Opinion of the Court            9

Barr requests that we consider a reply brief that she filed after the deadline. We **GRANT** that motion. But, because we conclude that the district court did not err in dismissing Barr's amended complaint, we **AFFIRM**.