22-30-cv
Austin J. Harig v. City of Buffalo

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 22nd day of May, two thousand twenty-three.

PRESENT:
> **PIERRE N. LEVAL,**
> **DENNY CHIN,**
> **MYRNA PÉREZ**
>
> *Circuit Judges.*

_____

Austin J. Harig,

> *Plaintiff-Appellant,*

> v.

City of Buffalo, Jason Heidinger, Lisa Wedlake, Douglas Hayden, John Bannister, Kyma Dickinson, Sara Jo Keaton, Joshua Heidinger, Michael Sullivan, Caryn Anderson, Patrick McDonald, Robert Felschow,

> *Defendants-Appellees.*

_____

**No. 22-30-cv**

FOR PLAINTIFF-APPELLANT: CHAD A. DAVENPORT (R. Anthony Rupp III, *on the brief*), Rupp Baase Pfalzgraf Cunningham LLC, Buffalo, NY.

FOR DEFENDANTS-APPELLEES: DAVID M. LEE, Assistant Corporation Counsel, *for* Cavette A. Chambers, Corporation Counsel, City of Buffalo Department of Law, Buffalo, NY.

Appeal from an order and judgment of the United States District Court for the Western District of New York (Christina Reiss, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order and judgment of the district court are **AFFIRMED**.

Plaintiff Austin J. Harig appeals the district court's December 8, 2021 award of summary judgment on his claims for false arrest, malicious prosecution, and failure to intervene to prevent unconstitutional acts, in favor of Defendant City of Buffalo and Defendants John Bannister, Kyma Dickinson, Douglas Hayden, Jason Heidinger, Joshua Heidinger, Sara Jo Keaton, Michael Sullivan, Caryn Anderson, Patrick McDonald, Robert Felschow, and Lisa Wedlake, in their individual capacities (together, "Defendants"). These claims arose from Harig's August 25, 2016 arrest by Defendants, officers of the Buffalo Police Department, and his subsequent criminal prosecution. After the charges against Harig were dropped, he sued. The district court ruled that: (1) Defendants had probable cause or arguable probable cause to arrest Harig, affording them qualified immunity on Harig's false arrest claim; (2) Defendants had continuing probable cause for criminally prosecuting Harig, negating an essential element of his malicious prosecution claim; and (3) as a result, Harig could not establish a predicate constitutional violation, an essential element of his failure to intervene claim. After resolving Harig's appeals of evidentiary exclusions, we find that Defendants were entitled to qualified immunity because "officers of reasonable competence could disagree on whether the probable cause test was met,"

2

*Zalaski v. City of Hartford*, 723 F.3d 382, 390 (2d Cir. 2013), and affirm the district court's order and judgment on that basis. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

**I.    Background**[1]

On the evening of August 24, 2016, and into the morning of August 25, 2016, Harig hosted a party. Some attendees witnessed an intoxicated guest, Brett Garlock ("Brett"), appear to inappropriately touch another guest, and assaulted Brett. Brett's cousin Zachary Garlock ("Zachary") joined the altercation and Harig, according to his testimony, was "in the middle of this fight trying to break it up." Joint App'x at 168. Subsequently, Brett and Zachary were pushed down the stairs. Brett was seriously injured and lost consciousness, while Zachary suffered a seizure.

Around 2:30 a.m., Defendants arrived on the scene in response to a 911 call. After officers searched the apartment, Harig and others gathered on the front porch. Defendant Keaton began questioning Zachary, who falsely identified himself as "Zachary Drake." Keaton asked Zachary who was involved in the fight, but he refrained from identifying anyone. After Defendants separated Zachary from the others, he allegedly initially told them that Harig had nothing to do with the fight or Brett's assault. Harig alleges that officers then yelled at Zachary about an outstanding warrant for his arrest. Eventually, Zachary completed a sworn supporting deposition stating: "My cousin got roughed up, I tried to protect him, Austin threw me down the stairs. He

---

[1] In reviewing the district court's award of summary judgment to Defendants, we construe the evidence in the light most favorable to Harig and draw all reasonable inferences in his favor. *See Radwan v. Manuel*, 55 F.4th 101, 113 (2d Cir. 2022).

was fighting my cousin [B]rett." *Id.* at 236. Zachary signed the supporting deposition using his real name.

Defendants then returned to the front porch and arrested Harig solely based upon Zachary's supporting deposition.[2] As Defendants Bannister and Keaton handcuffed Harig, others on the front porch protested and told them that Harig had not been involved in the fight. Harig testified that other witnesses identified the true assailants to Defendants but that the officers took no action.

On August 31, 2016, Zachary provided a second sworn statement that he "remember[ed] pulling Austin Harig off of Brett" and "saw Austin over [Brett] punching him." *Id.* at 1757–58. And on September 1, 2016, Zachary testified in a criminal proceeding that Harig "was punching [Brett] as the others were kicking and punching him . . . in the back of the head and neck area." *Id.* at 1771. He further testified that he "saw Austin, everybody actually, just pouncing on [Brett]." *Id.* at 1775. On cross-examination, Zachary stated that he had consumed "maybe a . . . [q]uarter of a liter" of vodka before the fight. *Id.* at 1777.

On September 15, 2016, journalist Frank Parlato published an article quoting Zachary, who recanted his August 25, 2016 supporting deposition and said that officers used his outstanding warrant and desire to see his wounded cousin to coerce him into falsely accusing Harig. Zachary did not make any recantation to the police or to prosecutors.

On February 2, 2017, a grand jury "no billed" Harig and, on February 8, 2017, all criminal charges were dropped. Seven months later, Zachary died suddenly. Harig subsequently sued Defendants and, on December 8, 2021, the district court granted Defendants' motion for summary judgment dismissing Harig's claims.

---

[2] Harig was charged with gang assault in the first degree in violation of New York Penal Law § 120.07, assault in the third degree in violation of New York Penal Law § 120.00(1), and harassment in the second degree in violation of New York Penal Law § 240.26(1).

4

## II. Standard of Review

We review *de novo* a district court's award of summary judgment, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Radwan*, 55 F.4th at 113. Summary judgment is appropriate only when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one element of a claim, any factual disputes with respect to other elements of the claim become immaterial and cannot defeat a motion for summary judgment." *Weiss v. Nat'l Westminster Bank, PLC*, 993 F.3d 144, 162 (2d Cir. 2021).

We review evidentiary rulings for abuse of discretion, "giv[ing] district court judges wide latitude in determining whether evidence is admissible," *Warren v. Pataki*, 823 F.3d 125, 137–38 (2d Cir. 2016) (quoting *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 148 (2d Cir. 2001)), and reverse only where the district court "acted arbitrarily or irrationally," *United States v. Jackson*, 335 F.3d 170, 176 (2d Cir. 2003) (quoting *United States v. SKW Metals & Alloys, Inc.*, 195 F.3d 83, 88 (2d Cir. 1999)). "[I]t is appropriate for district courts to decide questions regarding the admissibility of evidence on summary judgment" and "[t]he principles governing admissibility of evidence" apply as they would at trial. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997); *see also Figueroa v. Mazza*, 825 F.3d 89, 98 n.8 (2d Cir. 2016).

**III.    Discussion**

   **A.    Harig's Appeal of Evidentiary Rulings**

The district court did not abuse its discretion in excluding an affidavit from Frank Parlato containing Zachary's alleged recantation.[3]  Harig proffers Zachary's statements as hearsay evidence admissible under Federal Rule of Evidence 807(a)—the "residual exception"—a catch-all to be invoked "very rarely, and only in exceptional circumstances." *United States v. Ulbricht*, 858 F.3d 71, 123 (2d Cir. 2017) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).  To be admissible under the residual exception, hearsay evidence must be "supported by sufficient guarantees of trustworthiness" and "more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807.

Zachary's statements to Parlato lack "sufficient guarantees of trustworthiness as required by Rule 807." *United States v. Dawkins*, 999 F.3d 767, 791 (2d Cir. 2021).  First, they are unsworn statements that seek to recant a sworn supporting deposition given under penalty of perjury.[4]  *Cf. United States v. Doyle*, 130 F.3d 523, 543 (2d Cir. 1997) (finding no abuse of discretion and affirming exclusion of evidence where appellant argued "that unsworn statements made during an investigation [we]re more reliable than a sworn statement made as part of a later plea bargain").  Second, while the statements assert that Zachary was coerced into giving his August 25, 2016

---

[3] Zachary purportedly told Parlato:

> I want to recant my statement about [Harig] I made to the police. He [n]ever hit anybody. . . .  I was coerced by the arresting officers. They wanted to incriminate [Harig].  My statement to the police was under a false name.  I said I was Zach Drake.  My real name is Zachary Garlock.  [Harig] did not get personal in the fight.  The police asked me if [Harig] did it and they wouldn't let me see my cousin unless I told them so I said [Harig] did it. . . .  I was scared.  I had warrants against me.

Joint App'x at 1830–31.

[4] Parlato's article does not even present Zachary's statements as trustworthy. *See* Joint App'x at 1840 ("First [Zachary] told police Harig beat his cousin.  Then he told [me] Harig did not beat his cousin.  Which is the truth?").

6

supporting deposition identifying Harig as an assailant, they do not address Zachary's second sworn statement on August 31, 2016 and sworn testimony on September 1, 2016—doubling and tripling down on Harig's involvement in Brett's assault—well after any purported coercion ended. Third, the statements are uncorroborated.[5]  *See* Fed. R. Evid. 807(a)(1) (requiring courts to "consider[] the totality of circumstances under which [a statement] was made and evidence, if any, corroborating the statement"); *see also United States v. Lumpkin*, 192 F.3d 280, 287 (2d Cir. 1999) ("To evaluate whether a statement is sufficiently trustworthy, we look to evidence that corroborates both the declarant's trustworthiness and the truth of the statement.").  For example, Parlato admits that he has "since lost the audio recording of [his] conversation with Zachary," Joint App'x at 1831, and Parlato's affidavit, signed over five years after Zachary's statements were allegedly made, is bereft of details regarding the circumstances of his interview with Zachary— including how the interview came about, what questions were asked, where the interview took place, and what other statements Zachary made.  Accordingly, the district court did not abuse its discretion in finding that Zachary's statements were hearsay not admissible under the residual exception.  *See Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 234 (2d Cir. 1999) ("[T]he residual

---

[5] In a footnote, Harig argues that Zachary's statements to Parlato are corroborated by a *different* affiant's hearsay statement that "Zachary admitted to me that police used his intoxication and warrants to coerce a false statement to implicate Austin Harig's involvement in the fight." Joint App'x at 1827.  Harig also asserts that Zachary's statements to Parlato and the other affiant were declarations against Zachary's penal interest, admissible under Federal Rule of Evidence 804(b)(3), because they exposed him to a potential perjury charge.  However, Rule 804(b)(3) admits "[a] statement that . . . a reasonable person in the declarant's position would have made *only if* the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to . . . criminal liability." Fed. R. Evid. 804(b)(3) (emphasis added).  But at argument, Harig's counsel conceded that there was a different possible explanation for Zachary's statements:  Harig and Zachary were friends and Zachary "would certainly have th[e] motive to" recant in order to help Harig out of his situation.  Oral Argument at 31:24–33:35.  Thus, the district court did not abuse its discretion in finding that the requirements of Rule 804(b)(3) were not met. *See United States v. Marquez*, 462 F.2d 893, 895 (2d Cir. 1972) ("[The declarant] merely sought to exculpate his friends, and the statement therefore lacks the inherent reliability which justifies the declaration against interest exception to the hearsay rule.").

7

hearsay rule requires an initial trustworthiness determination before it will allow for the admission of evidence . . . .").[6]

### B. Harig's Appeal of Summary Judgment in Favor of Defendants

#### 1. *Harig's Claims for False Arrest and Malicious Prosecution*

Harig's appeal of the district court's award of summary judgment on his false arrest and malicious prosecution claims can be resolved by answering one question: Did "arguable" probable cause exist to arrest Harig and to prosecute him thereafter? *Zalaski*, 723 F.3d at 390.[7] We find that arguable probable cause did exist, entitling Defendants to summary judgment on the basis of qualified immunity.

"[P]robable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007)). And an officer may "rel[y] on mistaken information, so long as it was reasonable for him to rely on it." *Id.* By contrast, "[a]rguable probable cause exists if either (a) it was objectively reasonable for the officer to believe that

---

[6] Harig also challenges the district court's decision to strike portions of his own affidavit pursuant to the sham-affidavit doctrine, which provides that "a party may not create an issue of fact precluding summary judgment by offering an affidavit that *contradicts* his earlier sworn testimony in the case." *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998). At oral argument, Harig's counsel conceded that nothing the district court struck from Harig's affidavit would, if deemed admissible, create a genuine dispute as to any material fact relevant to whether Defendants had probable cause or arguable probable cause to arrest and prosecute Harig. *See* Oral Argument at 3:35-5:40. Accordingly, we need not address the district court's application of the sham-affidavit doctrine to determine whether summary judgment was properly awarded.

[7] If probable cause to arrest Harig and continuing probable cause to prosecute him existed, Harig's substantive claims for false arrest and malicious prosecution fail because probable cause is an absolute defense to both claims. *See Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014). If arguable probable cause to arrest Harig and continuing arguable probable cause to prosecute him existed, Defendants prevail on their qualified immunity defenses, regardless of whether actual probable cause existed. *See Zalaski*, 723 F.3d at 390.

probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." *Zalaski*, 723 F.3d at 390 (quoting *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004)); *see also District of Columbia v. Wesby*, 138 S. Ct. 577, 591 (2018) ("Even assuming the officers lacked actual probable cause to arrest the partygoers, the officers are entitled to qualified immunity because they 'reasonably but mistakenly concluded that probable cause was present.'" (alterations adopted) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987))). A police officer is entitled to qualified immunity from a false arrest claim if arguable probable cause existed at the time the officer arrested the plaintiff, *see Figueroa*, 825 F.3d at 100, and from a malicious prosecution claim if there was arguable probable cause at the time the criminal proceeding commenced and continued, *see Betts*, 751 F.3d at 83.

A reasonable officer could have believed there was probable cause to arrest Harig solely based upon Zachary's supporting deposition. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness." (internal quotation marks omitted)). Although Zachary was intoxicated when he gave his supporting deposition identifying Harig as an assailant in the August 25, 2016 fight, we have previously held that intoxicated witnesses' accounts can furnish probable cause in certain circumstances. *See, e.g.*, *Curley v. Village of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001) (stating that a witness's "intoxication alone cannot cast doubt on his story"). Likewise, if Defendants invoked Zachary's outstanding arrest warrant to induce him into provide a supporting deposition, that would not defeat qualified immunity because it would not "violate clearly established constitutional rights of which a reasonable person would have been aware." *Zalaski*, 723 F.3d at 388; *cf. United States v. Ortiz*, 943 F. Supp. 2d 447, 456 (S.D.N.Y. 2013) (Sullivan, *J.*) (noting, in

the related context of a threat to arrest a suspect's family member, that "[t]he Second Circuit has never squarely addressed . . . the question," but collecting cases in other courts concluding that "such a threat does not render a confession involuntary *if* the police . . . could lawfully carry out the threat"). Accordingly, arguable probable cause existed at the time Harig was arrested.

A reasonable officer could have also believed there was continuing probable cause to prosecute Harig. The party attendees' protestations and identification of Brett's assailants after Harig's arrest establish only "conflicting accounts," which do not negate arguable probable cause "where an arresting officer chose to believe" one account over others. *Curley*, 268 F.3d at 70; *see also Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 128 (2d Cir. 1997) ("Once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest."); *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) ("Probable cause does not require absolute certainty."). Defendants were entitled to credit Zachary's supporting deposition, which was provided under penalty of perjury, over the other attendees' unsworn protestations. *See Panetta v. Crowley*, 460 F.3d 388, 395–96 (2d Cir. 2006) ("[T]he fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestation of innocence generally does not vitiate probable cause." (alterations, citations, and internal quotation marks omitted)). Similarly, Parlato's article containing Zachary's purported recantation—assuming any Defendant read it upon publication[8]— would negate the existence of continuing probable cause only if the article made apparent "the

---

[8] Here, Harig argues that even if Zachary's statements to Parlato are not admissible to prove the truth of the matters asserted in them, they are admissible to show their effects on Defendants, who may have read them upon publication. We assume their admissibility for that limited purpose. *See* Fed R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay.").

10

groundless nature" of Harig's charges. *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 571 (2d Cir. 1996) ("In order for probable cause to dissipate, the groundless nature of the charges must be made apparent by the discovery of some intervening fact."). But by the time Zachary purportedly recanted his August 25, 2016 supporting deposition and accused Defendants of coercion, he had already given an additional sworn statement to the Buffalo Police Department on August 31, 2016 and sworn testimony on September 1, 2016, neither of which were assertedly coerced or ever recanted. Accordingly, arguable probable cause existed to prosecute Harig.

Viewing the admissible evidence in the light most favorable to Harig, we cannot say that "'[*no*] reasonable officer, out of the wide range of reasonable people who enforce the laws in this country, *could have* determined that' probable cause existed." *Triolo v. Nassau Cnty.*, 24 F.4th 98, 108 (2d Cir. 2022) (quoting *Figueroa*, 825 F.3d at 100). Thus, we find that Defendants were entitled to summary judgment on the basis of qualified immunity.[9]

### 2. *Harig's Claim for Failure to Intervene*

Harig's claim for failure to intervene to prevent unconstitutional acts is also unsuccessful due to the lack of a predicate constitutional violation. *See O'Neill v. Krzeminski*, 839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers."); *see also Buari v. City of New York*, 530 F. Supp. 3d 356, 392 (S.D.N.Y. 2021) ("[T]here can be no failure to intervene claim without a primary constitutional violation." (citation omitted)). Because Defendants were entitled to summary judgment on Harig's other claims on the basis of qualified

---

[9] Because there was *arguable* probable cause to arrest and prosecute Harig, we need not reach whether *actual* probable cause existed to do the same. *See Guan v. City of New York*, 37 F.4th 797, 808–09 (2d Cir. 2022) ("[W]e do not reach the issue [of whether the officers had actual probable cause], for we conclude that the officers are protected by qualified immunity."); *Coons v. Casabella*, 284 F.3d 437, 442 (2d Cir. 2002) ("Because Casabella had arguable probable cause and thus was entitled to summary judgment on the basis of qualified immunity, we need not reach his claim that he had actual probable cause . . . .").

immunity, Harig similarly cannot "overcome the hurdle of qualified immunity" on his failure to intervene claim. *Ricciuti*, 124 F.3d at 129. For the same reasons, it was not "objectively unreasonable" for each Defendant to conclude that each other's conduct did not violate Harig's constitutional rights. *Id.*

We have considered Harig's remaining arguments and found them to be without merit. Accordingly, we **AFFIRM** the order and judgment of the district court awarding summary judgment to Defendants.

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk of Court